[Crim. No. 5120.  In Bank.  Nov. 17, 1950.]

THE PEOPLE, Respondent, v. HAROLD SEXTON, Appellant.

Rupert Crittenden and Gordon K. Williams for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. Frank Coakley, District Attorney, and Folger Emerson, Assistant District Attorney, for Respondent.

SHENK, J.—This is an automatic appeal from a judgment imposing the death penalty after a conviction of the murder

of Harry Harames committed in the course of an attempted robbery. A motion for a new trial was denied.

The defendant Sexton and Dominick Louis Silva were jointly charged with the murder of Harry Harames on September 2, 1949, in Alameda County. They were tried jointly. The jury returned a verdict of guilty as to each defendant but recommended life imprisonment as to Silva, who has not appealed. Sexton will be referred to as the defendant.

The sufficiency of the evidence to support the verdict of guilty is not questioned. It is contended that misconduct of the district attorney, error in the admission of evidence, and error in certain instructions prejudiced the defendant's chances for a recommendation of leniency by the jury.

The undisputed facts may be summarized briefly. The defendant and Silva were each 21 years of age. They had been boyhood friends and during adolescence had spent some time in a home for feeble-minded children in Sonoma County, Silva for a longer period than the defendant. On September 1, 1949, and prior thereto the defendant and Silva were employed by a butcher in Hayward. On the evening of that day the defendant was required to deliver meat to a restaurant in Oakland. Silva and Roberta Edwards, a girl of 17, accompanied him in his employer's 1939 Cadillac automobile. They delivered the meat and then whiled away a few hours in Richmond. About midnight they drove to a place opposite the grocery store of Harry Harames known as the Main Fruit Market on East 14th Street in Oakland. They parked and watched the market until closing time, about 2:15 a. m. (Sept. 2d) when Mr. Harames left his store in a panel truck to go to his home at 53 Estabrook Street in San Leandro. They followed, passed the truck and took up a position opposite the entrance to Estabrook Street from E. 14th Street. Their purpose was robbery. Mr. Harames arrived at his residence, stopped before his closed gate and descended from his truck to open it. As he was doing so, the defendant and Silva left the parked Cadillac car and proceeded toward the truck. The defendant approached the truck at the left side with a loaded .32 automatic in his left hand. He was left-handed. He accosted Harames, who was again occupying the driver's seat, and told him it was a "stick-up." Instead of complying with the demand, Harames put the truck in gear. A shot was discharged from the gun held by the defendant, which entered Harames' body. Silva apparently had not reached the right hand side of the truck, which was to be his station, but was

coming around the rear of the truck when the gun discharged. Roberta's part was to start the engine of the car for the getaway, which she did and opened both doors when she heard the shot. Immediately after the shot was fired the defendant and Silva ran to the automobile and left the scene without completing the robbery. Within about an hour Harames was found on the road beside the truck, mortally wounded but conscious. He died the next day. He had $174 in cash and some checks on his person.

█ At the trial Roberta Edwards testified for the state. Her testimony implicated her as an accomplice but it is not contended that there was no sufficient corroborating evidence. Corroboration amply appears from the testimony of admissions prior to the trial by the defendant to others including a witness who at the defendant's request threw the gun into the bay as they were driving over the East Bay Bridge, and from the defendant's own admissions on the witness stand. He assumed to take the entire blame for the attempted robbery and the shooting, and represented that Silva just came along for the ride. █ In his attempts to invoke leniency he testified that the firing of the gun was accidental due to Harames' act in putting the truck into gear. The jury was entitled to reject this explanation in view of the downward course of the bullet through the torso of Harames' body and other factual evidence.

█ It is contended that the district attorney made inflammatory remarks in his opening statement designed to create passion and prejudice against the defendant. The district attorney stated that the People expected to prove that the defendant planned to follow Harames into his house and torture him in an attempt to locate money which was supposed to be kept there. The remark was assigned as misconduct at the time it was made, and an instruction that the jury disregard it requested. Without ruling otherwise the court observed that it was merely a statement of what the People expected to prove. At the close of the trial the jury was instructed to disregard counsel's statements not supported by evidence. It is asserted that nevertheless the remark bore closely on the issue of the punishment to be imposed.

The record discloses that the questioned remark of the district attorney had no substantial bearing on the jury's determination; that the verdict of guilty without recommendation as to the defendant was based on the undisputed facts, and that on those facts the jury exercised its discretion in making

a distinction between the participants in the perpetration of the crime.

It is also contended that the district attorney in his closing argument misstated the function of the jury in connection with the punishment by saying that the question of punishment was not for the jury but for "someone else." It is claimed that he should have quoted the provision of section 190 of the Penal Code that the punishment was in the discretion of the jury. The instruction that the law vests in the jury the discretion to determine the punishment was correctly given to the jury by the court.

An examination of the closing argument of the district attorney with regard to punishment shows that he was advocating punishment for both defendants; that in his opinion the undisputed facts did not warrant a release of either from punishment; but that from those facts the jury could make a distinction between the two defendants and mete out to Silva the lesser penalty. The remarks were addressed to the exercise of the jury's discretion and there was nothing which indicated that the jury did not have the discretion vested in it by law. The record also shows that the defendant's counsel made on his behalf as favorable an appeal for leniency as was possible on the evidence.

There was neither misconduct nor a close question of guilt which would warrant the application of the cases relied on for a reversal. (*People* v. *Sampsell*, 34 Cal.2d 757 [214 P.2d 813] ; *People* v. *Berryman*, 6 Cal.2d 331 [57 P.2d 136].) Error and misconduct were involved in the Sampsell case, but the clear evidence of guilt indicated the harmlessness thereof and led this court to an affirmance of the judgment of conviction. A similar result followed from a consideration of the contentions and the record in the Berryman case. It was there observed that where there is a close question of guilt express admonitions by the court may not obviate the prejudice induced by misconduct. That recognized principle cannot be deemed to be applicable where, as here, there can be no question of the degree of the undisputed crime (Pen. Code, § 189), and the punishment for the resulting first degree murder rests in the discretion of the jury. Likewise in *People* v. *LaVerne*, 212 Cal. 29 [297 P. 561], which also involved an appeal from a judgment imposing the death penalty, the record of guilt was clear and the efforts of counsel were directed solely to invoking imposition of the lesser penalty. In affirming the judgment this court called attention to the

possibility that the claimed misstatements by the prosecuting officer might be considered inflammatory and prejudicial under a different set of facts. In affirming a judgment based on a verdict of guilty without recommendation in *People* v. *Caetano*, 29 Cal.2d 616 [177 P.2d 1], the court stated that the fact that discretion as to punishment was vested in the jury did not deprive the prosecuting officer of legitimate argument concerning matter which the jury was entitled to consider in exercising that discretion.

The foregoing also disposes of the contentions that the reading of Silva's confession to police officers under a general admonition by the court that it was to be considered only as against Silva was prejudicial as to the defendant. The question is raised because, after some attempts by the defendant's counsel to impeach Silva by contradictory statements in his confession and otherwise, the entire confession was read by Silva's counsel. This gesture by Silva's counsel, it is claimed, could not be considered as against his own client. It is argued that its effect is reflected by the difference in the punishment. The contention is without merit in view of the clear record of guilt and the unquestioned fact of the discharge of the gun by the defendant. This state of the record affords no basis for a conclusion that prejudice resulted. This observation disposes of similar contentions regarding the hearsay nature of the confession and of other evidence as against the defendant, which in view of the facts established by independent evidence was as to him merely cumulative.

Finally it is contended that the court's full and unquestionably correct instruction on the law of duress as a defense was not based on any evidence in the case except the self-serving testimony of Silva that as they went toward the truck, the defendant followed him holding the gun, and that he was afraid of him. It is urged that the only effect of the instruction was to prejudice the jury against the defendant. That evidence justified the statement to the jury that before threats or menace could constitute a defense, they must give rise to a reasonable cause for belief that life would be endangered if there was refusal to commit the act. The fact that the jury convicted Silva indicates that there was no credence given to his testimony regarding the supposed menace.

An examination of the entire record including the evidence justifies the conclusion that the defendant received a full and fair trial and that nothing occurred which would justify a reversal.

The judgment and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

The opinion was modified to read as above printed on December 14, 1950.