[Crim. No. 5868.   Second Dist., Div. One.   Sept. 6, 1957.]

THE PEOPLE, Respondent, v. JACK H. BARTLETT et al., Defendants; THERON EDWARD BURNSIDE, Appellant.

Ernest L. Graves for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

DRAPEAU, J. pro tem.*—On March 28, 1956, 26 pairs of men's slacks disappeared from a department store in the San Fernando Valley.

A stock boy working for the store saw a man walking to a Studebaker automobile in the store's parking lot with a bundle of clothing in his arms. The man put the clothing into the car.

The quick-witted boy took the license number of the car, and reported the incident to one of the store's executives. This gentleman called the police.

Within a few minutes two officers in a police patrol car saw the same Studebaker, and followed it. The Studebaker stopped at an intersection signal. One man got out and walked rapidly toward a gasoline filling station. One of the officers in the patrol car took after him, and arrested him.

The other man kept on driving the Studebaker. The officer still in the patrol car followed and arrested him. The purloined pants were in the back of the Studebaker, covered with newspapers.

These two men were charged in two counts, with grand theft, and with conspiracy to commit theft. A jury convicted them on both counts, and they were each sent to the penitentiary. Each had priors.

The following facts appear from the evidence:

These two men, Jack H. Bartlett, and Theron Edward Burnside, met in downtown Los Angeles. Mr. Burnside owned the Studebaker automobile, and they went together in it to the department store. Mr. Bartlett parked the automobile in a lot used by customers of the store. He parked it so that it was heading out.

Mr. Burnside went inside the store to look at a suit of clothes. Shortly afterward Mr. Bartlett went into the store, and to the clothing department where Mr. Burnside was talking to a clerk, and where the slacks were.

While Mr. Burnside was talking to the clerk, Mr. Bartlett stole the slacks. He admitted at the trial that he did; but he said that he took them on two different occasions, and made two trips to put them into the car. It was argued to the jury that this was petty theft at most, for the total value of

---

*Assigned by Chairman of Judicial Council.

the stolen slacks was but $260. The jury resolved this argument against both defendants.

Mr. Bartlett did not appeal from the judgment, but Mr. Burnside did.

So this court is concerned mainly with Mr. Burnside's actions and conduct as shown by the record, from which an inference may be drawn that he and Mr. Bartlett planned the crime, and that he took part in it.

Mr. Bartlett said that after he stole the slacks and put them into Mr. Burnside's car he drove around the block a time or two, and picked up Mr. Burnside, who then took over the wheel.

After Mr. Burnside was arrested he made an incriminatory statement to a police officer.

The officer's testimony as to this statement is as follows:

''He stated they were talking over how they could make some money. He said that he knew Jack Bartlett was a booster, and that they went into this store, which was Butler Brothers' store, with the idea of stealing something, just anything that they could sell and get some money out of.

''He stated that they parked the car in the back parking lot, that Jack was driving; that they got out and entered Butler Brothers; that he, himself, Burnside, walked over and was talking to a clerk about a suit of clothes; that he noticed Bartlett standing over by the table where the slacks were stacked; that he talked to the clerk about a suit of clothes a few minutes and he turned around and looked, and Mr. Bartlett was gone.

''He stated he looked out the back door or window of the store and observed that the car was also gone. He stated that he walked out the front door of the store onto the main street, which he indicated to me was Van Nuys Boulevard, and started walking down the street.

''He said that he had walked about two or three blocks when Mr. Bartlett pulled up in his car. He said that Mr. Bartlett slid over and he himself, Burnside, got under the wheel of the car and started down the street.

''He said that he noticed a stack of slacks in the back seat of the car. He said they went down a block or so and then made a turn and hadn't gone over three or four blocks all together when Mr. Bartlett saw a police car behind him.

''He stated that Mr. Bartlett jumped out at the next corner and he continued on; when he saw the police car coming after him, that he pulled over and waited.

''He stated that he didn't realize that Mr. Bartlett would

attempt to take so many things; that they had no fence to sell this great amount of clothing; that the only thing they had in mind was that whatever they sold they would sell to people on the street."

Four grounds of appeal are urged:

1. Prejudicial misconduct of the deputy district attorney.

2. That the evidence is insufficient to support the verdict as to count 1.

3. That the evidence is insufficient to show the existence of a conspiracy.

This ground of objection is argued under two heads: (a) That it was error to deny defendant's motions to dismiss under section 995 of the Penal Code, made before plea and before trial, and (b) that the evidence is insufficient to permit Mr. Burnside's admissions to go to the jury in any event.

4. Error in instructions.

These grounds of appeal will be discussed in the order stated.

1. The prejudicial misconduct asserted is based upon two parts of the argument to the jury by the deputy district attorney.

First, upon a part of his argument with respect to Mr. Bartlett's testimony that he took the slacks out of the store on two different trips to the automobile, upon which defendant's argument that the crime was petty theft was based.

Secondly, comment by the deputy district attorney upon Mr. Burnside's not taking the witness stand and testifying for himself.

As to the first, the following colloquy among court and counsel is in the record:

The deputy district attorney (arguing). "Now, if he told you that he took them all at one time, we have some evidence here that makes it grand theft. Look at this overall case. Grand theft is a felony. It is the kind of felony where you go to the State Prison, or you go to County Jail.

"In regard to petty theft, there is only one place that the Court can send you, and that is to the County Jail.

"Mr. Graves: I am going to object to any comment by counsel as to what constitutes the punishment for a particular type of felony.

"The Court: The matter of the punishment is not for the jury's concern.

"Mr. McGinley: I understand that, your Honor. I am not asking that. I am discussing this generally because of the

version one of the defendants put on this with respect to the difference between a petty theft by the two takings, as distinguished from a grand theft. I think I am entitled to argue that.

"The Court: You are entitled to argue the difference between the two, what is petty theft and grand theft, but you are not entitled to argue what the punishment for either is. The jury will be instructed to disregard any reference to punishment. They will later be instructed that they are not to give the matter of punishment any consideration whatsoever."

As to the second—the reference to defendant's failure to take the stand—the deputy district attorney said:

"If you were charged with a theft or you were involved in something, wouldn't you take the stand and tell the jury that you didn't do it."

And again: "If you have evidence that is against you and you don't take the stand and deny any of those things, that is something that the jury can consider."

No misconduct appears in either instance.

■ The deputy district attorney's reference to punishment was incidental to his argument as to the degree of the theft. (*Cf., People* v. *Sexton,* 36 Cal.2d 361, 365 [224 P.2d 1] ; *People* v. *Dozier,* 35 Cal.App.2d 49 [94 P.2d 598].)

And the trial judge promptly advised the jury that they were not to be concerned with the matter of punishment.

■ Nor was there any prejudicial error in the deputy district attorney's comments upon defendant's failure to take the stand and testify in his own behalf. (*People* v. *Dozier, supra,* pp. 57-58.)

■ 2. The record shows that there is substantial evidence to support the jury's verdict as to both counts.

There is no occasion to belabor the time-honored substantial evidence rule, enacted by the people of California in their Constitution, and applied by our courts in hundreds and hundreds of cases in our reported decisions.

Mr. Justice McComb, speaking for our Supreme Court in *People* v. *Crooker* (1956), 47 Cal.2d 348, 356 [303 P.2d 753], clearly states the function of an appellate court in reviewing criminal cases: "After conviction all intendments are in favor of the judgment and a verdict will not be set aside upon the ground of insufficiency of the evidence unless the record clearly shows that upon no hypothesis is there substantial evidence to support it."

■ 3. Defendant's argument that it was error to deny his

motions to dismiss under section 995 of the Penal Code has not been considered. The record of the proceedings before the committing magistrate has not been brought to us. Therefore, there is no basis upon which a ruling can be made by this court. (*People* v. *Scott*, 24 Cal.2d 774, 777 [151 P.2d 517].)

So far as the foundation for admission in evidence of defendant's confession to the police officer is concerned, all that really needs to be said is that it was amply sufficient to support the trial judge's ruling.

■ The corpus delicti was definitely established as to count 1, charging grand theft. All that is necessary for admission in evidence of a defendant's confession is prima facie proof aliunde of the corpus delicti of the crime. (*People* v. *Rupp*, 41 Cal.2d 371, 377-378 [260 P.2d 1].)

And the same must also be said as to count 2, charging conspiracy to commit theft. ■ In conspiracy cases when a defendant confesses, but little other evidence is required to prove his guilt. (*People* v. *Steccone*, 36 Cal.2d 234 [223 P.2d 17].)

In passing, it should be said that the practice of charging defendants with substantive crimes, then charging them at the same time with conspiracy to commit the same crimes, and trying them on both charges, does not commend itself to this court. That practice adds legal complexities to cases otherwise easy to try, easy for jurors to understand, and easier for appellate courts to review. And within that practice lurk legal pitfalls that will some day cause embarrassment and trouble in the administration of the criminal law.

4. Finally we come to defendant's complaint about the instructions. They have, of course, been read. As a whole they are fair and complete.

Indeed, the instruction offered by defendant and refused, as to which he asserts error, was an alternate form of an instruction given at his request upon the same principle. This was to the effect that there must be proof of a crime before a defendant's statements or admissions may be considered by a jury. No error in the instructions given or refused appears in this record.

The judgment is affirmed.

White, P. J., concurred.

FOURT, J.—I reluctantly concur:
I would prefer that the cause be sent back to the trial court with directions to impose a proper sentence or judgment in

accordance with the actual facts of the case. However, as the case law now stands, I realize that this probably would result only in added expense and loss of time in bringing the appellant back to the trial court where it could be found that "in the interests of justice" appellant did not suffer two prior felony convictions (one federal cause and one state case consisting of two separate, distinct counts and sentenced separately on each), though the contrary is the truth.

As I view it, the appellant frankly admitted the prior convictions in court and he should, in my opinion, suffer the added penalty provided in the statutes for those with prior convictions.

This case is but another of a long line of cases wherein an appellant was charged in the information with, and personally *admitted in open court* to prior convictions of felonies. In this instance it was charged in the information that the appellant had been convicted of a violation of the Harrison Narcotic Act, a felony, in 1944, and had served a term in a federal prison therefor, and in addition thereto that he had been convicted of a violation of section 11715, Health and Safety Code, a felony (forgery of prescriptions for narcotics) in 1949, and had served a term in the state prison therefor.

At the time of the taking of the pleas, on April 30, 1956, each of the defendants remained mute as to the prior convictions, and the court thereupon denied the same on behalf of each of the defendants. On June 4, 1956, the cause was called for trial and appellant himself, in open court, specifically admitted the two prior convictions as charged in the information.

At the time of sentencing it was brought to light that Bartlett, appellant's codefendant, was at that very moment on probation for another offense, and as the court remarked, "has got three pages of prior brushes with the law." In addition, it was brought out that he was a narcotic addict, or had a "narcotic problem." His record indicated that he had been a "booster" (shoplifter) off and on since he started using narcotics about eight years ago; that he had been involved in heroin transactions and had been in jail several times as a user of narcotics. Further, the record disclosed that in 1955 he had pleaded guilty to a burglary charge, and in October, 1955, the proceedings had been suspended and he was given five years' probation, a part of the terms being that he was to go to a hospital in Fort Worth, Texas, for treatment (presumably for narcotic addiction). He left supposedly to go to

the hospital but he apparently never arrived there, and his whereabouts since that time were unknown until his arrest. He was sentenced to the state prison on each of the present counts, the sentences to run concurrently.

As to appellant Burnside, his counsel in speaking to the court at the time of sentencing, said that the appellant was a professional gambler and a "very friendly person," and that he would "like at this time to request leave to withdraw the plea as to the priors for the purpose of having them determined by the Court at this time." He further said, "Your Honor, may I call your attention to the priors. They are two narcotic priors." Burnside's record discloses that he was a professional gambler who worked at all of the crooked tricks of the trade; that he was an illegal user of narcotics since about 1936, and had used heroin at least during the last eight months; that he had been picked up at various times for crimes such as extortion and robbery; that he went to the state prison on his second felony narcotic conviction from where he was paroled; and that during such parole term he was involved in a robbery and sent back to prison by the parole authorities to serve the full term. Apparently immediately upon his release from prison he engaged in the narcotic traffic again and was arrested on the present charge March 28, 1956.

The reporter's transcript discloses that the judge, at the time of sentencing, made no comment or statement whatever in answer to or regarding the request of counsel with reference to the prior convictions, and immediately following the request of counsel, sentenced appellant to the state prison, and ordered the sentences to run concurrently. And in any event, there is nothing whatsoever in the record as of that time to the effect that appellant denied the prior convictions.

Although there is no abstract of the judgment on file in the record in accordance with the provisions of section 1213.5 of the Penal Code, the clerk's minutes in the file disclose that on July 5, 1956, at 9:15 o'clock a. m., the court found the priors to be true, and set them forth in full. That set of minutes was entered on July 9, 1956. The record then discloses that on July 9, 1956, at 9:30 o'clock a. m., the following occurred in court:

"THE COURT: *People* v. *Bartlett and Burnside,*

"MR. GRAVES: If the Court please, I have a motion in that matter. At this time I would like to move the Court to withdraw the previous admissions as to the priors of both defend-

ants for the purpose of entering a new and different plea as to those priors; that is, deny them.

"THE COURT: The motion to withdraw the admission of the priors as to both defendants will be granted.

"MR. GRAVES: Thank you. Would the Court make a finding now as to the existence of those priors?

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"THE COURT: The Court finds the priors to be not true.

"MR. GRAVES: Thank you, your Honor."

(Whereupon the proceedings in the above-entitled matter were concluded.)

There is then contained in the file another set of minutes purportedly of July 5, 1956, wherein it is recited "prior convictions proven not true." The court reporter's transcript shows no such proceedings on that date. That set of minutes was entered July 11, 1956.

On July 12, 1956, appellant filed his notice of appeal and on the same date the judge issued a stay of execution pending appeal and released the appellant on $3,000 bail. In October, 1956, the depositor of the bail surrendered the defendant in court, the bail was exonerated and the defendant was remanded to custody.

I am fully aware that under *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241], and *People* v. *Harris,* 146 Cal.App.2d 142 [301 P.2d 178], the following situation is possible: though an ex-convict has frankly *admitted* in open court that he has been convicted of the prior felony convictions charged against him and that he has served terms therefor in prison,—that subsequently, perhaps at the time of sentencing, or later, the trial judge may find that the defendant *was not so convicted,* and that he *did not serve any terms in prison* therefor.

This is as if the trial judge were to say to the defendant, "Mr. Defendant, though *you have admitted* that you were previously convicted of the felonies charged against you, and though *you have admitted* that you served terms therefor in prison, I am now going to find that you were *not* so convicted, and further that you did *not* serve any terms in prison therefor, in order that I can avoid for you, the added penalties which the legislature has imposed upon defendants with prior felony convictions."

But this case goes one step further than the previous cases, and is an example of what can happen when courts fail in the first instance to stay within the bounds of the statutes adopted by the Legislature. Here the appellant himself never

denied that he had been so previously convicted, and the judge, in open court, at the time of sentencing, took no action, made no comment or statement about the request with reference to the prior convictions, and sentenced the defendant to the state prison. Four days later, and obviously after some sort of conference or arrangement, which so far as the court reporter's notes indicate, did not occur in open court, the proceedings heretofore set forth, as of the 9th of July, took place. The defendants themselves were not even present in court on July 9th, according to the clerk's minutes and the court reporter's notes are silent on the subject.

The question can well be put, "When, if ever, does a judge *not* have the right or power to find the exact opposite of that which the defendant freely and openly admits, and which is documented by certified copies of judgments, finger prints and prison records?"

If it is too severe to impose an added punishment upon a defendant twice previously convicted of a felony and who has served penitentiary terms therefor, the Legislature should be asked to amend the law. In any event, an ex-convict, after one or two experiences in prison, can avoid the severity of the law in this respect, if there is any severity in it, by the simple process of behaving himself and complying with the law. Certainly the courts should not take it upon themselves to do by sophistry and indirection and fiction, that which they cannot legitimately do directly.

Courts should not torture the language of the statutes to the extent of giving a meaning thereto which is clearly not there, and they should not dotingly relieve such defendants of the responsibility of their own admitted course of conduct.

Under the situation presented in this case the good citizens of the community, surely with wonderment, are left to figure out what sort of legalistic legerdemain, or sleight of hand can bring about such an anomaly, and a defendant could well experience some bewilderment as to just where he was during the time of his incarceration, if he was not in the penitentiary, as the record discloses he was and as he said he was.

Respect for the law will not be enhanced by the procedures adopted and followed in this case.

A petition for a rehearing was denied September 30, 1957, and respondent's petition for a hearing by the Supreme Court was denied October 30, 1957.