[Crim. No. 15483. First Dist., Div. One. Feb. 27, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY LARON PAUL, Defendant and Appellant.

**COUNSEL**

David F. Brown, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Jamie Jacobs-May, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KELLY, J.\***—Defendant and appellant Bobby Laron Paul was convicted by a jury of three counts, i.e., count one, theft and battery on victim Anderson; count two, battery and assault on victim Schwartz; and count three, conspiracy to commit battery (as a lesser included offense under count three, which initially charged a violation of Pen. Code, § 182, conspiracy to commit robbery). He was sentenced to serve nine months in the county jail for the conviction of conspiracy to commit battery. The sentence was suspended along with the stay of execution on all other convictions. He was placed on three years' probation, a $350 fine was imposed, and he was ordered to refrain from use of alcohol. Codefendant Strawn pled guilty to related charges and was severed from the case. He testified against appellant. A third defendant, Engle, was also severed.

Appellant is seeking a reversal on all counts. The appeal is divided into two parts; the first part sets forth the alleged errors in the trial which affect his convictions on all counts, and the second part sets forth the alleged errors as to particular counts as more specifically set forth herein.

### ERRORS AFFECTING CONVICTIONS ON ALL COUNTS

Soon after appellant's arrest and prior to trial, two police officers gave him a polygraph test with his consent. At trial both of these officers testified, but made no reference to the fact that the defendant had submitted to a polygraph test. The first reference to that fact was made when tapes of appellant's voluntary statements were offered and admitted with no objection from defense counsel and played before the jury. It is to be pointed out that both the prosecution and defense counsel knew of the existence and contents of the tapes for weeks prior to the trial.

The colloquy on the tapes wherein reference to the polygraph test was discussed is as follows:

"A. I don't know what to say but I don't think that there meant [*sic*] to be an intentional robbery.

"Q. It turned out that way.

---

*Assigned by the Chairperson of the Judicial Council.

"A. I'm not trying to save my neck or anything but I didn't know anything about it.

"Q. Are you willing to back that up?

"A. Yes.

"Q. Willing to go on a polygraph?

"A. Yes.

"Q. Okay, will you sign a consent form to go on a polygraph say about four o'clock today?

"A. This afternoon?

"Q. This afternoon.

"A. Uh huh."

Willingness to take the test was affirmed several more times before the tape ended.

Another tape stated:

"Q. You have submitted to a polygraph test. Is that correct?

"A. Yes.

"Q. Did you submit to this of your own free will?

"A. Yes.

"Q. Did anybody force you in any way?

"A. No."

In answer to a question from defense counsel on cross-examination, one of the police officers stated that the defendant had taken a polygraph test. Out of the presence of the jury defense counsel continued a voir dire examination of the officer establishing his credentials and the reliability of the polygraph test. The defense then sought to have the results of the

polygraph test admitted into evidence, claiming that the prosecution had opened the issue by the introduction of the tapes. The court denied the motion to admit the tapes on the ground that under California law—absent a stipulation from both parties—the results of a polygraph test are not admissible.[1] (*People* v. *Aragon* (1957) 154 Cal.App.2d 646, 658 [316 P.2d 370]; *People* v. *Adams* (1975) 53 Cal.App.3d 109, 114 [125 Cal.Rptr. 518].) Nor was the defendant permitted to testify that he took the polygraph willingly. The defense contended that since the jury knew from the contents of the tapes of the fact that a polygraph test was taken by the defendant that the results of that test should be disclosed (favorable to the defense), and that the jury should know that the defendant took the test willingly. It should be noted that the actual results of the test were made known to the jury later by the defendant who stated on cross-examination: "I took a polygraph and I passed the polygraph." That statement was stricken by the court and the jury was advised by the court that willingness to take a polygraph test was not to be considered by them.

■ Failure to allow these admissions to the jury, argues the appellant, is prejudicial and reversible error since, having heard from the tapes the fact that a polygraph test had been taken but not being told of the results of that test, and knowing that the defendant had taken that test willingly, the jury could conclude that the defendant failed the test, and from the fact that defendant was being prosecuted, the test indicated his guilt. It would appear that the trial strategy of defense counsel

[1]"THE COURT: All you would have had to have done, if somebody would have made any objection, that portion of the tapes would have been stricken by the Court. No one made any objections whatsoever to that testimony.

"MR. WEIR [prosecuting attorney]: They had discovery for weeks, they have known what was on those tapes.

"THE COURT: What you have done is allowed it to come in and then say because you didn't object and it came in, that now I should allow the lie detector test, it should be admitted. And as far as I'm concerned, I don't recall everything that was said in the Thornton case, but I do definitely recall reading the last California case, the last word on the subject, so to speak, and it said it was inadmissible. And until the higher court rules that it's admissible—and I think you have a good foundation in this case to go up on, and, as you pointed out, you are requesting it, even though you didn't first bring it up, I think this is a good case. But this court is going to follow the law as it exists today, and I'm not going to admit the lie detector test."

"THE COURT: Mr. De Solenni [defense counsel], if it somehow happened to be on the other foot, if that lie detector test clearly indicated that the defendant was guilty and all of the foundation that's been presented to me had been [*sic*] and the District Attorney offered it, and even though you didn't object, I would not admit it, I would not allow it to be admitted, because the cases have held that lie detector tests, as far as the courts are concerned, it hasn't been proven to the higher courts to be reliable. I would not allow it in to prove guilt, therefore, I cannot allow it in to prove that he's not guilty, because they say it's unreliable."

backfired, and now this court must decide to what extent, if any, this would constitute prejudicial reversible error.

Clearly, the trial tactics of defense counsel were improper. (*People* v. *Parrella* (1958) 158 Cal.App.2d 140, 147 [322 P.2d 83].) In *Parrella* the district attorney similarly neglected to object to evidence regarding the voluntary taking of a polygraph test which came out on direct examination of appellant by his own attorney. The prosecution then attempted to introduce the results of the testimony on cross-examination. The Court of Appeal cited this as error, stating: "In so proceeding the prosecutor undoubtedly committed error. The law is clear that legitimate cross-examination does not extend to matters improperly admitted on direct. Immaterial and irrelevant testimony cannot be thus brought before the jury under the guise that it is legitimate cross-examination. [Citations.]" (*Ibid.*) Though the court found there was error, it was not prejudicial error in view of the trial court's instructions to the jury that "the question of lie detector has no place in the case" (p. 145), and it was " 'not to consider any question about lie detector' " (p. 146). This, together with other strong evidence of guilt, was sufficient to cure the situation and the court found that reference to the polygraph test was not prejudicial error.

■ It is well settled that neither the willingness nor the unwillingness of a witness to take a polygraph test is admissible. (*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267] [cert den., 420 U.S. 924 (43 L.Ed.2d 393, 95 S.Ct. 1118)]; *People* v. *Carter* (1957) 48 Cal.2d 737 [312 P.2d 665].) ■ Likewise, the results of such a test are also inadmissible absent a stipulation by both parties. (*People* v. *Jones* (1959) 52 Cal.2d 636, 653 [343 P.2d 577] [cert. den., 361 U.S. 926 (4 L.Ed.2d 350, 80 S.Ct. 364)].) ■ Can it be said that the disclosure before the jury of the fact that a polygraph test was given, that the failure of the court to admit the favorable results thereof for the appellant, together with the evidence of the appellant's willingness to take the test, was so prejudicial that a reversal of the verdict should be ordered?

Appellate review must determine if it is reasonably probable that a result more favorable to the appellant would have been reached in the absence of such error. (*People* v. *Schiers* (1971) 19 Cal.App.3d 102, 109 [96 Cal.Rptr. 330].) With reference to what was disclosed to the jury on the issue of the polygraph test, nothing was heard which would have led the jury to conclude that the test was unfavorable to appellant. Nothing that the jury heard indicated that the appellant refused to take the test. The contents of the tapes indicated that he took the test freely and

voluntarily. The jury also heard from the appellant that he passed the test.[2] True, all of these references to a polygraph test and its results were stricken by the court, and while it is recognized that once the bell has been rung it is difficult to unring, in the instant case all that was disclosed to the jury in reference to the polygraph test was in support of the appellant and not against him. In addition, the court's instructions to the jury were definite and clear. The court advised the jury as follows: "Ladies and gentlemen of the jury, you heard the evidence concerning the taking of a lie detector test. And the law of the State of California at this stage precludes the results of said test to be admitted into evidence, in other words, you cannot consider the results of the test. So no matter whether the defense tries to have the results presented to the jury or the prosecution tries to have the results presented to the jury, it's the Court's duty to rule that that evidence is not admissible. And in your deliberations you are not to conjecture or speculate as to what the results of the lie detector test may have been, that's not to enter into your deliberations in any manner."

From the totality of the evidence and the circumstances, the case against appellant was not so evenly balanced that the references to the polygraph test tipped the scales against him. In this case the jury heard the testimony of a codefendant (who testified against the defendant) and the testimony of the victim and the officers. Furthermore, the defendant on the stand indicated that he instigated the fight with victim Schwartz. In addition, the reference made by the appellant that he was willing to take the polygraph test strengthened his credibility. In view of the court's instructions and the overwhelming evidence of guilt, no prejudicial error was committed.

■ With reference to the appellant's claim that he was denied a fair trial because the court delayed the sentencing of codefendant Strawn on his plea of guilty until after the appellant's trial, it is without merit. Although the delay in sentencing was done, as the trial judge told Strawn, "to give the Court an opportunity to hear the evidence and see what the jury considers the facts to be and makes their determination. It may be to your benefit, it may be to your detriment, but I think it's information that I should have." There is nothing in this statement or in the record to support the appellant's contention that the delay amounted

[2]On cross-examination, the appellant stated, "I took a polygraph and I passed the polygraph." The court struck this statement and instructed the jury that willingness to take a polygraph was not to be considered by them.

to bringing improper pressure on codefendant Strawn as a prosecution witness to testify unfavorably against the appellant at the trial. Such a practice is not unfair as a matter of law. (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 135 [132 Cal.Rptr. 265] [cert. den., 430 U.S. 986 (52 L.Ed.2d 382, 97 S.Ct. 1686)].) Whether it is unfair depends on the circumstances in each case. In the instant case it was disclosed at the trial that Strawn had not yet been sentenced and did not know what his sentence would be and that no deals or promises were made in exchange for his guilty plea. The fact that Strawn had not yet been sentenced was used to impeach his credibility on cross-examination by the defense counsel.[3]

■ The appellant objects that the admission into evidence of photographs of codefendant Engle's hands was irrelevant and inflammatory and was prejudicial error. No objection was made by defense counsel at the trial on the inflammatory issue so it cannot be raised on appeal. (Evid. Code, § 353.) On the issue of irrelevance, one of the issues before the jury was whether battery had been committed pursuant to a conspiracy. The bruised hands of one of the coconspirators had a tendency in reason to prove that he had recently hit someone with his hands.[4]

■ The claim of error cited by the appellant in that he was charged in counts one and two with robbery and in count three with a conspiracy to commit those robberies is without merit. *People* v. *Bartlett* (1957) 153 Cal.App.2d 574 [314 P.2d 995], cited by the appellant, states that such a practice "does not commend itself to this court," but the court affirmed therein the defendant's conviction for the substantive charge of robbery and the charge of conspiracy to commit robbery. *Bartlett* is not authority for the assertion that such a practice is reversible error. The court finds no reversible error.

---

[3]"Q. All right. Do you think you have anything to gain in the way of sentence by shoving the blame off on either Mr. Paul or Mr. Engle? A. I am not shoving the blame nowhere. I admitted my guilt, I am not blaming no one else, no one—I was, in my own—well, I was drunk, but I was there, I committed the crime. If I have to pay for the crime, I will pay for it."

[4]At trial defense counsel seemed to argue that the evidence was irrelevant since there was no evidence that Engle ever hit Schwartz with his hands. In fact, Strawn testified that both Engle and appellant were beating up Schwartz, and that Engle asked Strawn to drive his car away from the scene because Engle's hands hurt too much.

### Errors Affecting Specific Counts

The errors hereinafter cited by appellant are concerned either with specific counts of the information, instructions given by the court, or the admissibility of evidence. These alleged errors will be considered in the order set forth in appellant's brief.

■ A reversal of a conspiracy conviction is sought because count three of the information failed to allege or charge an overt act as required by Penal Code sections 184 and 1104.[5] At the conclusion of the People's case defense counsel moved to dismiss count three because no overt act in furtherance of the conspiracy was alleged. The motion was denied, the court concluding that the overt act alleged in the information was the battery.[6]

The allegation set out in count three is not a model of good pleading. The prosecution could have amended the information at the time that defense counsel made the motion to dismiss. Although the alleged defect was on the face of the pleading, the appellant did not demur on the ground that the pleading does not state a public offense. (Pen. Code, § 1004, subd. 4.)

Neither did the appellant object to the defect that the accusatory pleading does not state a public offense by motion in arrest of judgment. (Pen. Code, § 1012.) Despite this failure on the part of appellant, the defect can be raised on appeal. (*People* v. *Blankenship* (1951) 103 Cal.App.2d 60 [228 P.2d 835].)

The issue of the pleading of conspiracies was recently considered in *Feagles* v. *Superior Court* (1970) 11 Cal.App.3d 735 [90 Cal.Rptr. 197]. Therein the court held that an allegation of conspiracy in an indictment is fatally defective unless an overt act is charged; that the failure to allege with particularity the overt act or acts forming the basis of the conspiracy deprives the accused of his Sixth Amendment right to be informed of the

---

[5]Count three of the information charged as follows: "The said defendants HOWARD CLINTON ENGLE and BOBBY L. PAUL, did wilfully and feloniously, conspire with another person to commit the crime of ROBBERY, by planning to rob two persons, after committing battery upon them in violation of Section 182 of the Penal Code of the State of California."

[6]CALJIC No. 6.23, as given by the court, reads as follows: "It is alleged that the following were overt acts which were committed in this state by one or more of the defendants for the purpose of furthering the object of the [conspiracy] [conspiracies] was battery."

nature and cause charged against him with respect to the conspiracy count. The thrust of the court's ruling was that the failure to prove the overt acts alleged in support of the conspiracy rendered the indictment defective even though other overt acts were proved. The court rejected the Attorney General's position that since an indictment may be amended to allege overt acts that are proved, there is no need to reverse just because those that are alleged are not proved. In rejecting this position the court stated: "Manifestly, the accused has the right to be informed of the charge against him and given an opportunity to prepare to meet that charge (Pen. Code, § 952; Witkin, Cal. Criminal Procedure (1954) § 185, p. 174). Were the People to charge a specific overt act and fail to prove it but prove a completely different act, a defendant might be taken by surprise. This would deprive a defendant of due process of law." (*Id.*, at pp. 739-740.)

It may be conceded that the pleading in count three did not with clarity and specificity set forth the overt act in furtherance of the conspiracy. But can it be seriously maintained from all the facts and circumstances that the appellant was not aware of the charge against him, that he did not have an opportunity to prepare to meet the charge? The court, in denying the appellant's motion at the conclusion of the People's case, ruled that the battery was the overt act. If the information had alleged in the usual terminology that the overt act in furtherance of the conspiracy "was battery," clearly no pleading problem would be present. The appellant was not misled in any way by the pleading defect, and unlike the *Feagles* case, *supra*, where the issue had been raised before trial, the appellant herein raised the issue at the trial. Furthermore, the appellant had the benefit of pretrial discovery and was aware of the evidence against him. In addition, as the court stated in *Blankenship, supra:* "An information is sufficient if it contains in substance a statement that the accused has committed some public offense therein specified. 'It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused.' " (103 Cal.App.2d at p. 62.)

Penal Code section 960 applies the doctrine of prejudicial error to criminal proceedings: "No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." This rule was applied in the recent case of *People* v. *Powell* (1974) 40 Cal.App.3d 107

[115 Cal.Rptr. 109] (cert. den., 420 U.S. 994 [43 L.Ed.2d 677, 95 S.Ct. 1435]), where the information alleged that the murder was committed in Los Angeles County (the forum for trial was Los Angeles County) but the evidence demonstrated that the murder wounds were inflicted and the homicide resulted in Kern County. The appellants in that case alleged as error the material and prejudicial variance between the information filed and the evidence presented at trial. In rejecting this contention the court stated: "The contention that this variance is prejudicial is specious. Appellants have failed to demonstrate that they were misled in the preparation and conduct of their defense and the evidence heard and considered by the jury. Appellants were previously tried for the same charge. Both had the benefit of a preliminary transcript and a full trial transcript. In no way could they or their counsel have been misled as to the nature of the evidence that the prosecution would offer." (*Id.,* at p. 124.) In like manner with respect to the instant case there is no showing that the appellant was "misled in the preparation and conduct of [his] defense and the evidence heard and considered by the jury."

Appellant was fully aware of all the overt acts; the crime took place in one evening in his presence. In addition, he had the benefit of discovery and was aware of the evidence against him. There was a technical error in pleading because of the failure to properly allege an overt act, but the error was not prejudicial error warranting reversal of the conviction of the particular charge.

The appellant's contention that the trial court erred in its instructions on the conspiracy count with reference to specific intent is without merit. The appellant's brief is not clear as to just what instructions are allegedly erroneous since a caption in the brief refers to "Conspiracy to Commit Robbery," but the discussion of the point concerns itself with the battery instruction. The court properly instructed the jury as follows: "In the lesser-included offense of conspiracy to commit a battery, a necessary element is the existence in the mind of the defendant the specific intent to agree or conspire to commit a battery. As I explained to you, you only have to find the one specific intent, the specific intent to agree, because battery does not require specific intent. If you do the act, if you find a person does the act, then criminal intent is inferred."

In the body of his discussion in his brief, appellant claims that the instruction given, *supra,* was erroneous in that it states that the jury need not find "Appellant had the specific intent to commit battery." To the

contrary, it sets forth that a necessary element in the mind of appellant is "the specific intent to agree or conspire to commit a battery," although the crime of battery is not a specific intent crime.

■ The appellant further contends that the failure of the trial judge to instruct, *sua sponte,* on the lesser included offense of conspiracy to commit assault was prejudicially erroneous. He was convicted of conspiracy to commit battery. The appellant contends that the jury should have been given the choice of a possible conviction of conspiracy to commit assault. Assault is a lesser included offense of a charge of battery. (*People* v. *Fuller* (1975) 53 Cal.App.3d 417 [125 Cal.Rptr. 837].)

Instructions on lesser included offenses are required if the evidence raises a question concerning the presence of the elements of the offense charged. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) But here no evidence is presented to show that the offense is less than what was charged and proved. The court is not obligated to instruct on a lesser included offense. (*People* v. *Noah* (1971) 5 Cal.3d 469 [96 Cal.Rptr. 441, 487 P.2d 1009].)[7] In the case at bar there was no evidence that either the agreement or the substantive crime committed was less than a battery, i.e., an assault. From the appellant's own testimony he admitted that he instigated the fight and that it was his intent to beat up the victims. Both the appellant and codefendant Strawn admitted they actually hit the victims. The totality of the evidence indisputedly shows a battery, not an assault. Failure to so instruct was not error.

■ The appellant further contends error with respect to his conviction of counts one and two for battery, in that the court failed to instruct the jury that diminished capacity is a defense to battery. There was evidence concerning the appellant's intoxication at the time of the alleged crimes. The appellant argues that battery is defined as "any willful and unlawful use of force or violence upon the person of another" (Pen. Code, § 242), and since a battery requires "willful" use of force, a particular intent is an element of the offense.

---

[7]In *Noah,* the defendant claimed that failure to instruct on the lesser included offense of assault with a deadly weapon (Pen. Code, § 245) was erroneous. The court had instructed on aggravated assault by a prisoner serving a sentence less than life (Pen. Code, § 4501). The elements of the offenses are identical except that section 4501 additionally requires the defendant to be a prisoner. There was no evidence introduced that defendant was not a prisoner. Hence, the court held that failure to instruct was not erroneous.

An instruction on diminished capacity is only available in specific intent crimes. (*People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].) The appellant nowhere asserts that battery is such a crime. The two cases cited by appellant, i.e., *People* v. *Cram* (1970) 12 Cal.App.3d 37, 45 [90 Cal.Rptr. 393], and *People* v. *Poddar* (1974) 10 Cal.3d 750, 758 [111 Cal.Rptr. 910, 518 P.2d 342], involve crimes requiring specific intent. The court finds no merit to this contention of appellant.

■ With reference to appellant's conviction for theft, it is argued that certain items of evidence—victim Anderson's jacket and traveler's checks—were improperly admitted into evidence because they were seized in violation of the Fourth Amendment. The court is satisfied that there is no merit to this claim. Since the record does not reflect an objection to this evidence or motion to suppress, appellant argues that he has been denied effective assistance of counsel.

The evidence demonstrates that shortly after the incident at the beach, victim Anderson flagged down a deputy sheriff and advised him what had happened. Within minutes the defendants, who were driving away in codefendant Engle's car, were stopped and arrested for robbery. The defendant's car was locked and left at the scene. The three defendants were transported to the station house in the police vehicle. After being advised at the station house that victim Anderson's jacket and traveler's checks were missing, Officer Winters returned to the defendant's car and saw a jacket on the floor of the car fitting the description given by victim Anderson.[8] Winters opened the car with the defendant's keys and recovered the jacket and traveler's checks from the sun visor. Although the record does not reflect whether the search and seizure took place in the absence of a search warrant, it is assumed for purposes of this discussion that no search warrant had been issued. It is clear from the record that at the time the defendants were apprehended for robbery at the scene, the officers had probable cause to believe that the defendants had stolen property; therefore, a warrantless search of the car at that time was permissible. "[W]hen there is probable cause to believe that an automobile stopped on a highway contains contraband, evidence of a crime, or was itself an instrumentality of the commission of one, law enforcement officers need not obtain a warrant before conducting a search since there is no distinction of constitutional proportion between an immediate search on probable cause without a warrant and the

---

[8]From the record it appears that the coat was in plain view, hence there was no search. (*People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1].)

automobile's immobilization until one is secured." (*People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145] [app. dismissed, 412 U.S. 915 (37 L.Ed.2d 142, 93 S.Ct. 2738)]; *Chambers* v. *Maroney* (1970) 399 U.S. 42, 51-52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975].)

The delay in searching the car did not vitiate the validity of the search at a point later in time even though the car had not been impounded. Even assuming that probable cause did not arise until after the defendants were arrested the search and seizure was proper. *People* v. *Hill, supra,* 12 Cal.3d at pages 752-753, condoned a warrantless search of an automobile if probable cause to search the car arose after the car was impounded. "Even if it is assumed that there was no probable cause to believe the vehicle contained evidence related to the reasons for which it was impounded, a warrantless search would nevertheless be permissible if after the automobile was impounded the police officers became aware of facts which gave rise to probable cause to search for evidence connected to an 'unrelated' offense. The warrantless searches in *Chambers, McKinnon* and *Laursen* were deemed constitutionally permissible because of the 'distinguishing characteristic of mobility' of the items searched. Once there is probable cause to search such an item, for constitutional purposes there is 'no difference between on the one hand . . . holding the car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.' (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 51-52 . . . .) This rationale does not turn on whether the probable cause to search arose before or after the automobile is impounded. Rather, it is only necessary that there be probable cause to search at the time the vehicle is searched."

*People* v. *Koehn* (1972) 25 Cal.App.3d 799 [102 Cal.Rptr. 102], cited by the appellant, is not controlling in this case. In that case the defendant was arrested for carrying a concealed weapon which the officers saw at the time of arrest through the windshield of the car. The officer at the scene then proceeded to thoroughly search the vehicle, prying open a locked tire well with a crow bar, where marijuana and heroin were found. The conviction for the possession of marijuana and heroin was reversed because the search was not justified. The scope of the search

was unreasonable in light of all the facts and circumstances at the time the vehicle was stopped.

The same result was reached—that is, the scope of the search went beyond what was reasonable under the facts and circumstances at the time—in *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], referred to in the *Koehn* case. In *Kiefer* the defendant was stopped for a speeding violation. A passenger in the vehicle made a "furtive" gesture and the driver alighted from the car and approached the officer. The officer testified he was concerned for his safety so he walked over to the passenger side of the car, opened the door and saw marijuana plants on the floor and proceeded to search the glove compartment and the passenger's purse. In sustaining the trial court's suppression of the items on the motion of the defendant, the Supreme Court held that under the circumstances of the case the scope of the search was not justified. Both *Koehn* and *Kiefer* were concerned with the scope of the search in the light of the facts and circumstances of each case. The search in the case at bar does not appear unreasonable in scope based on what was found, the prior knowledge of what was missing, and the fact that the defendants were under arrest for robbery. The key element in the case at bar is not the scope of the search but the delay factor. This issue is discussed in the *Hill* case, *supra*, wherein the court stated: "In the case at bench the police officers were constitutionally empowered to search the defendants' automobile at the scene of their apprehension. (*Carroll* v. *United States, supra,* 267 U.S. 132.) As in *Laursen* the fact that the automobile was impounded and not searched until later at a garage does not alter the constitutional status quo. For the purposes of applying the *Chambers-Laursen* rule it is of no constitutional significance that the police officers here actually conducted a brief roadside search of the automobile. This initial intrusion was conducted in the dark by flashlight; having discovered marijuana during this limited search of the passenger compartment, the officers had reason to believe that additional marijuana might be secreted within the vehicle. Thus, at the time the automobile was searched at the garage there was probable cause to believe it contained contraband. The search, therefore, was permissible under *Chambers* and *Laursen.*" (12 Cal.3d at pp. 751-752.)

The court is satisfied that the evidence was properly admitted and the appellant's contention that he was denied effective assistance of counsel because of his failure to object to the admission of such evidence on motion to suppress is rejected.

■ Finally, appellant's contention that his sentencing was more severe than codefendant Strawn's, and was therefore a denial of equal protection, an abuse of discretion, prejudicial and not justified by the evidence, is also without merit.

Appellant was sentenced to nine months in the county jail, suspended, conditioned on the payment of a $350 fine, serving 90 days in jail, and three years' probation. This was for the conviction of theft, battery, assault and conspiracy to commit battery. Codefendant Strawn, who pled guilty to the more serious crime of attempted robbery and conspiracy to rob, was not required to serve any time, was fined $500 and given a suspended sentence of one year in the county jail and four years' probation. No case authority is referred to by the appellant with reference to this alleged error. Furthermore the record before the court does not contain any objection on this ground. There is also a lack of a transcript of appellant's sentencing, making it impossible to ascertain the recommendations to the court and the court's views regarding the case. For that reason the issue is not properly before the court. However it should be noted that probation is not a right but an act of clemency to be exercised in the court's discretion, and the court's order in that regard will not be disturbed on appeal in the absence of a showing of an abuse of discretion. (*People* v. *Pinon* (1973) 35 Cal.App.3d 120 [110 Cal.Rptr. 406].) The uncontradicted evidence, including the appellant's own testimony, established that he instituted the conspiracy and that he actually inflicted more of a beating on the victim than the codefendants. The court did not abuse its discretion.

Judgment affirmed.

Racanelli, P. J., and Sims, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.