[Civ. No. 24804.   Second Dist., Div. Two.   Mar. 6, 1961.]

EARL A. KELLEY, Appellant, v. LEONARD T. BAILEY, Respondent.

S. M. Dana, M. E. Hennes and █Edward I. Pollock for Appellant.

Theodore A. Horn, Ben C. Cohen, Richard L. Oliver, Myron L. Garon, David S. Smith, Abe Mutchnik and Ned Good as Amici Curiae on behalf of Appellant.

Spray, Gould & Bowers and Joseph L. Spray for Respondent.

Henry E. Kappler, Forrest A. Betts, Sidney A. Moss and Walter Schell as Amici Curiae on behalf of Respondent.

ASHBURN, J.—Plaintiff appeals from judgment for defendant entered pursuant to jury verdict in a negligence action. He sought to recover for personal injuries and property damage allegedly sustained when his vehicle was struck in the rear by one owned and operated by defendant.

The cars were southbound nearing the intersection of Main Street and Slauson Avenue in Los Angeles. Defendant testified that plaintiff made such a sudden stop without signal that he was unable to avoid the collision. Plaintiff claimed that he made a gradual stop for the intersection and that defendant came headlong into him at a speed of about 35 to 40 miles an hour and knocked his car (which was momentarily in neutral as he was shifting gears) across the intersection, inflicting upon him the familiar whiplash injury.

Appellant makes no claim of insufficiency of the evidence to support the verdict, but relies upon alleged errors of the court and misconduct of opposing counsel.

Appellant's brief does not observe the fundamental requirements as to appellate briefs. Rule 15(a) of the Rules on Appeal: "Each point in a brief shall appear separately under an appropriate heading, with subheadings if desired. Such headings need not be technical 'assignments of errors' but should be concise headings which are generally descriptive of the subject matter covered. The statement of any matter in the record shall be supported by appropriate reference to the record. Every brief shall be prefaced by a topical index of its contents and a table of authorities, separately listing cases, statutes, court rules, constitutional provisions, and other authorities." 4 California Jurisprudence 2d section 480, page 309: "It is the office of a brief attacking a decision to point out the errors complained of, as shown in the record, to state the points on appeal separately under appropriate headings, to give arguments and authorities in support of the points made, and to show that the errors resulted in prejudice to the substantial rights of the appellant. Thus, while counsel for the appellant is entitled to be heard upon every error which he deems it his duty to raise as ground for reversal, the appellate court cannot be expected to search the record or prosecute an independent inquiry for errors on which the appellant may be relying. It will notice only those errors pointed out in the brief, and all others may be deemed waived or abandoned. Hence an appellant who fails to present a point in his brief is precluded from insisting that the court consider the matter. Not only must the appellant raise the point in his brief, but he must point out the error specifically, showing exactly wherein the lower court's action is deemed erroneous. A general objection may be ignored, such as one where the appellant merely cites the transcript and states that each ruling of the trial court objected and excepted to was erroneous, or simply states that the court erred in all respects to which exceptions were taken as described in the record." Such assignments as those made by appellant[1] do not suffice. However, we shall perform a substantial labor which properly belongs to counsel.

Appellant's major complaint is that "defense counsel pursued an unwarranted interrogation and impeachment of this

[1] "1. Irregularity in the proceedings by the adverse party through his counsel; 2. Irregularity in the proceedings of the Court; 3. Abuse of discretion of the Court during trial in admitting certain evidence; 4. Errors in law in rulings in evidentiary matters; 5. Error in law in refusing Plaintiff's instruction on Res Ipsa Loquitur."

doctor [Morris L. Goren] in order to undermine the plaintiff's case, by utilizing material from another action and from other proceedings without proper foundation over repeated objection of Appellant's counsel." Dr. Goren had testified to examination and treatment of plaintiff and a diagnosis that he sustained "a strain and sprain of the muscles and ligaments of the dorsal-lumbar junction of the spine." Also: "In this particular individual, one must consider that he has had a kyphoscoliosis of the spine for many years, and this particular type of spine is very prone to be aggravated by an injury of the type he has had on March 29, 1958." And: "Doctor, did I understand you to say that this man has some permanent disability here? A. I said that he had permanent residual, due to the aggravation of the injury of his back." On cross-examination the following occurred: "Q. Doctor, you are being compensated for your testimony here in court, is that correct? A. I expect to be. Q. Doctor, is your testimony here in your reports influenced in any way by the side who has engaged your services? A. No, sir. . . . Q. By Mr. Spray: Doctor, has your testimony or payment for your reports and examinations ever been influenced by how much you were paid or by whom you were paid, Doctor? Mr. Dana: I will object to that as being irrelevant and immaterial, and asking for activity in the past not pertaining to this particular case. The Court: Overruled. What was your answer? The Witness: No. Q. By Mr. Spray: Doctor, didn't you in the case entitled Lewis vs. Lee on June 25, 1957, make a report of the condition of the plaintiff in that case, and send it to the plaintiff's attorney, indicating serious and permanent injury, and thereafter, when you found out—— The Court: Let him finish the question. Mr. Dana: He is compounding a question already. Mr. Spray: Let me finish the question. Would you read what I have said so far? (Question read by the Reporter.) Q. By Mr. Spray: When you found out that you had been hired by the defendant to make the report, you changed your report to indicate that the plaintiff had suffered no injuries whatsoever? Mr. Dana: I will object to that as being compound and argumentative, and immaterial and irrelevant so far as this case is concerned. The Court: Overruled. You may answer. . . . The Witness: The question is so compounded and mixed up that I can't answer it. It is argumentative. The Court: You can answer that yes or no. The Witness: No. It is false, entirely false. The Court: What part of the question don't you understand? The Wit-

ness: Well, the whole question is set up. It is a compound question, and it is like asking me when I stopped beating my brother-in-law. The Court: No. It isn't. Read it again, and listen to it. Read the question again. (Question read by the Reporter.) Mr. Dana: Before you answer, I would like again to state my objections to that question as being compound, argumentative, assuming facts not in evidence, and an attempt to impeach a witness without showing him any documents or matters pertaining to the impeachment and incomprehensible. The Court: Overruled. The Witness: I would like to see what he is reading from. The Court: That is not a question for you to decide. It is for me. The Witness: Well, let me answer it this way then: it is absolutely false.'' Defense counsel then offered to read from the transcript of the trial of *Warren* v. *Garrett,* superior court case No. 663325, a portion of Dr. Goren's testimony ''for impeachment purposes.'' Counsel for plaintiff objected ''to him offering any such transcript, except as it may pertain to evidence as may pertain to an impeachment or attempted impeachment on this particular matter that the Court has ruled on. Mr. Spray: I would like to impeach the doctor.'' Plaintiff's attorney enlarged upon his objections as follows: ''For the record, I would like to state my objection to the reading of these portions of the transcript, that this foundational element regarding impeachment is based upon a compound question, and was based upon a question that assumed facts not in evidence, and it was based upon an argumentative question, and an incomprehensible question to the witness, and the reading of this testimony and of this transcript of questions and answers, I will object to the form of the questions and to the contents of those questions and to the answers again, and I am being foreclosed from proper objections by the Court permitting this transcript to be read.'' The objections having been overruled, defense counsel read to the jury from the Warren-Garrett transcript as follows: '' 'Q. Has your testimony or payment for your reports and examination ever been influenced by how much you were paid or by whom paid you? A. No, sir. Q. Didn't you, Doctor, in a case entitled, ''Lewis v. Lee,'' on June 25, 1957, make a report, a medical report covering an examination of the plaintiff in that case, and send it to the plaintiff's attorney in which you indicated serious injury, and then thereafter when you found out that you had been paid by the defendant for your examination, did you not change your report to indicate that the lady suffered no injuries what-

734

soever?' Continuing on page 26, line 22. 'THE COURT: Doctor, answer the question. THE WITNESS: It is not a fact. The facts stated are not completely factual—— THE COURT: You may explain your answer if you desire, but answer it first and then explain. Q. BY MR. BRADISH: Is the answer "no" or "yes"? A. Yes, and may I explain now? Because in the first place I was not paid at that particular time for any of these reports. Secondly, the reports, as I had seen them in Court, were made out on the same day because I had corrected my opinion prior to sending it out; and they were sent out to the wrong people. . . . Q. BY MR. BRADISH: Just so we can have things straight, Doctor, your answer to my question was that you did change your report? A. Yes. Q. All right, now you say you were not paid at that particular time for that report. It is true, is it not, that in that particular case you were engaged by the attorneys for the defendant to examine the plaintiff to determine what the plaintiff's condition was? A. That is correct. Q. And you did at that particular time examine the plaintiff, did you not? A. Yes, sir. Q. And you prepared and dictated a report covering that examination, and your opinions and conclusions relative to that examination were typed up on your office stationary and signed by you, isn't that true? A. That is so, yes. Q. And through some mistake in your office, that report was sent to the plaintiff's attorney? A. Yes, sir. Q. And the defendant's attorney was the one who had engaged you to make the examination? A. Yes, sir. Q. Then, subsequent to that time, Doctor, is it not true that the plaintiff's attorney returned to your office the report that you had prepared and erroneously or mistakenly sent to him, and you thereafter changed that report to a material degree and sent a new report to the defendant's attorney, the attorney who paid you for your services, on your own stationary, and bearing your own signature? . . . A. That may be so, yes. Q. Now, Doctor, tell me this: Isn't it a fact that your opinion and conclusion in the first report that you sent to the plaintiff's attorney, and in that instance covering your examination of this person, Elray Lewis, in your opinion and conclusion contained in your report, on your office stationary, and over your signature, stated as follows: "It is my opinion that this is due to her injury of March 31, 1956, and that at the present time she still has residuals manifested by low back pain, as well as achiness in her right forearm. The prognosis in this case is guarded because of the persistence of her complaints in the low back." Wasn't that your opinion

and conclusion in the initial report? A. The statement, as read, is true. It was my opinion at that time and I changed it. It was not my opinion therefore.' I think it means 'thereafter'. (Reading) Q. Then that report was sent back to your office by the plaintiff's attorney, and then you changed that report and you sent another report to the defendant's attorney covering your examination of the same person, and in the report that you sent to the defendant's attorney, the man that paid you for your services, you put in a conclusion and opinion as follows: ''It is my opinion that as far as work is concerned, this woman could be working at the present time without difficulty and should be working. No further treatment is indicated for her and none is to be anticipated in the future.'' That is the opinion of the same patient in your second report, isn't that correct? A. That is correct because my findings were the same on the clinical examination.' ''

The credibility of the witness having been thus blanketed with a heavy robe of suspicion, appellant's counsel argues in this court: ''The entire tone of this trial was set and affected by the Court's attitude toward the charge that Dr. Goren, who was not a party to this suit, on some other occasion allegedly made inconsistent reports. Although it is understandable that a judicial officer would feel strongly on matters of this sort, it is this very strong reaction which Appellant claims undermined his right to a fair and impartial trial.'' The truth is, however, that the flattening of a witness upon cross-examination reflects efficiency rather than misconduct upon the part of the cross-examiner.

While the procedure pursued here was not quite correct, there was no prejudicial error in it. The witness should have been shown the transcript and asked whether he did not testify as set forth in a specified passage or passages. (Code Civ. Proc., § 2052; 54 Cal.Jur.2d § 176, p. 609.) ''It is not required, however, that alleged contradictory written statements be proved to be authentic before they may be shown to the witness sought to be impeached, although their authenticity must be proved before they may be used for the final purpose of impeaching the witness.'' (54 Cal.Jur.2d § 176, p. 609, *supra*.) At the time defense counsel read from the transcript it had not been authenticated in any manner so far as the record affirmatively shows, but no objection was made to the use of the transcript or the reading from it and it is too late to raise the point on appeal for the first time.

(54 Cal.Jur.2d § 181, p. 616.) Dr. Goren, before leaving the stand and after reading the pertinent portions of the transcript, conceded that those questions were put to him and the answers given as read. This was enough authentication of the transcript. Incidentally, the reading from it followed immediately after this statement found in the reporter's transcript: "(Court and counsel confer out of the hearing of the Reporter.)" For aught that appears, the question of foundation may have been then and there waived. Certainly it was impliedly waived by the failure to expressly object to the reading.

Appellant argues that this was cross-examination upon a collateral matter and that objection voiced upon this ground should have been sustained. But the general rule which forbids cross-examination upon collateral matters does not here apply, for this was an examination avowedly and actually directed toward showing bias and prejudice of the witness, an attack upon his credibility. Code of Civil Procedure, section 1868: "Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into collateral fact, when such fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness." Moody v. Peirano, 4 Cal.App. 411, 417, 418 [88 P. 380]: "The direction in this section that collateral questions are to be 'avoided' indicates that they are not absolutely excluded from consideration. Whether the collateral fact upon which the evidence is offered is directly connected with the matter in dispute and is essential to its proper determination is by the concluding portion of the section placed within the discretion of the trial court for primary determination. Unless it can be seen that the evidence is without any weight whatever in determining the issue the action of the court in receiving it will not be reversed."

Newman v. Los Angeles Transit Lines, 120 Cal.App.2d 685, 691 [262 P.2d 95]: "It is a rule of universal application that a witness may be required to answer any question which tends to test his accuracy, veracity or credibility. . . .

Great latitude should be allowed in developing the existence of bias. . . . Liberal cross-examination is the rule. [Citations.]" See also Moniz v. Bettencourt, 24 Cal.App.2d 718, 724 [76 P.2d 535]; Crutchfield v. Davidson Brick Co.,

55 Cal.App.2d 34, 38 [130 P.2d 183]; *People* v. *Evans,* 113 Cal.App.2d 124, 127 [247 P.2d 915].

The claim that some of the questions propounded to Dr. Goren were compound and that objection thereto should have been sustained on that ground (54 Cal.Jur.2d § 88, p. 407) cannot be upheld. Though the form may have been objectionable the transcript warrants the view that neither the witness nor anyone else was misled by the question; though the witness advanced that claim, he explicitly answered the question when required so to do and showed that he completely understood it. Error, if any, in this regard was not prejudicial.

Finally, Dr. Goren's testimony related only to damages on account of plaintiff's personal injury and the verdict was for defendant. Plaintiff claimed and proved without contradiction damage to his automobile. None of the medical experts took the position that plaintiff did not receive some slight personal injury. It seems apparent that the verdict was based upon the question of liability and therefore it cannot be said that error, if any, relating to Dr. Goren's testimony was prejudicial. (*Lewis* v. *County of Contra Costa,* 130 Cal. App.2d 176, 179 [278 P.2d 756]; *De La Torre* v. *Johnson,* 203 Cal. 374, 378 [264 P. 485]; *Hurd* v. *City & County of San Francisco,* 49 Cal.App. 361, 363 [193 P. 507]; *Church* v. *Payne,* 36 Cal.App.2d 382, 401 [97 P.2d 819]; *Hurt* v. *Monumental Mercury Mining Co.,* 35 Idaho 295 [206 P. 184, 186]; *Sherer* v. *Smith,* 155 Ohio 567 [99 N.E.2d 763, 766]; *Grabowsky* v. *Ossining Hospital Assn.,* 265 App.Div. 938 [38 N.Y.S.2d 503, 504].)

It is argued that the court erred in receiving into evidence the opinion of Dr. Meyers who was not called to the witness stand. Defendant's witness, Dr. Fillerup, after diagnosing a moderate whiplash syndrome in plaintiff, sent him to Dr. Meyers who made a report to Dr. Fillerup which he used in his own studies of plaintiff's case; he also consulted with Dr. Meyers and thereby strengthened his own opinion of plaintiff's condition. Portions of this report were read to the jury over plaintiff's objection, viz.: " ' X-rays which he brings with him from Dr. Fillerup's office show a marked old, apparently healed destructive process of the thoracic spine with marked deformity due to this process involving the entire chest cavity. The findings here are typical of an old burned out Pott's disease, which is now quiescent. It is our impression that he sustained a contusion of his thoracic back in the

accident, which he reports occurred on March 29, 1958. We feel that he is recovering satisfactorily from this, and he will have no residual difficulty due to any injuries sustained in this accident.' '' There was no error in this. Such a report stands on a parity with a patient's history of an accident and ensuing injuries given to his physician. It is admissible not as independent proof of the facts but as a part of the information upon which the physician based his diagnosis and treatment, if any. (*Cf. People* v. *Williams*, 187 Cal.App.2d 355, 365 [9 Cal.Rptr. 722]; *Hope* v. *Arrowhead & Puritas Waters, Inc.*, 174 Cal.App.2d 222, 229-230 [344 P.2d 428]; *People* v. *Lewis*, 186 Cal.App.2d 585, 601 [9 Cal.Rptr. 263].) Upon request the jurors should be told and doubtless would have been told that that evidence was received and was to be considered for this narrow and limited purpose. (An appropriate form of such instruction is found in BAJI 33-D.) Counsel made no such request at bar and the judge had no obligation to instruct *sua sponte*. Again we have a matter which goes to damages alone and hence cannot be prejudicial error entering into a verdict for defendant upon the ground of no liability.

■ Appellant's counsel says he was unduly restricted in cross-examination of defendant's expert, Dr. Fuchs. The following incident is cited: ''Q. Are you willing to examine on behalf of a plaintiff, too? A. Pardon? Q. You are willing to examine on behalf of plaintiffs? THE COURT: We are getting into matters which have no bearing on the case. Let's proceed.'' Perhaps this was unduly restrictive, especially in view of the cross-examination of Dr. Goren. But once more the alleged error goes to the testimony of a witness which concerned damages only.

■ After the jury returned its verdict for defendant, and had been polled (11 to 1), the court made certain remarks which, according to appellant's counsel, ''reflects, at least, a subconscious attitude because of the Dr. Goren matter that can be explained in no other way.'' Those remarks were: ''I think you should be commended for your services, not only for the result with which I happen to concur completely, but you have given counsel your complete attention over a trial that has been necessarily delayed by reason of counsel, and that makes it a little bit difficult for every one. Wholly apart from the outcome, counsel in this case are gracious gentlemen and good sports, and I know they join with me in thanking you for your very close attention at every stage

of the case, and I am sure they agree that it is a duty well done, as you saw it. As for myself, thanks for your kind attention." These comments could not have influenced the deliberations of the jury, which had ripened into a verdict. They reflected no bias or prejudice, merely approval of the verdict. There was no impropriety, much less prejudicial error, in the court's remarks.

In a manner it is claimed that there was error in refusing to give a res ipsa loquitur instruction. The entire "argument" on the subject is this: "On Res Ipsa Loquitur, see *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715 [211 P.2d 905]." The record contains no instruction given or refused. No motion to augment was ever made. We do not know what, if any, request was presented with respect to res ipsa and hence we cannot consider the point. (*Blair* v. *Williams*, 109 Cal.App.2d 516, 519 [240 P.2d 1043]; *Mills* v. *Los Angeles Junk Co.*, 3 Cal.App.2d 546, 548 [40 P.2d 285].)

Another point presented with remarkable brevity is this: "On indirect prejudicial suggestions of accident proneness throughout the trial, see *Browning* v. *King, D.C.A.* #22583." This deserves and receives the same fate as res ipsa.

Other alleged errors of no greater consequence are mentioned by counsel. We do not pause to discuss them.

Judgment affirmed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied March 30, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 3, 1961.

---

*Assigned by Chairman of Judicial Council.