[Crim. No. 1111. Fifth Dist. May 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALLEN KOEHN, Defendant and Appellant.

**COUNSEL**

Wallace J. Smith for Defendant and Appellant.

Evelle J. Younger, Attorney General, Charles P. Just and James A. Reichle, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GARGANO, J.**—Defendant appeals from his conviction of possession of heroin for sale (count I) and possession of marijuana for sale (count II) in violation of sections 11500.5 and 11530.5 of the Health and Safety Code, and carrying a pistol concealed in a vehicle (count III) in violation of Penal Code section 12025. His main contention is that the evidence upon which he was convicted on counts I and II was the product of an unlawful search and seizure.

On June 10, 1970, Patrick Buie of the Visalia Police Department received a telephone call from an adult male who refused to identify himself. The caller told the officer that a Rick Bateman and another man, a white male with long hair, were in possession of a large quantity of what he believed to be heroin; he said that the two men were in a 1966 green Ford station wagon and that they were selling the narcotic. However, a follow-up search by the police failed to locate the suspects. On the same day Visalia Police Officer Springmeyer received a second call from a male who refused to identify himself. The man stated that a 1966 green Ford, bearing license number RSP 525, was in front of the Mt. Whitney High School, that two long-haired white males were inside of the car and that they were selling drugs to high school students. The police again searched the area but this search, like the first one, was unsuccessful.

During the afternoon Detective Buie and Officer Springmeyer received information that there was a traffic warrant for Bateman's arrest. Sometime later, as the officers were cruising the Visalia area in a police car, they observed a green Ford station wagon traveling north on Mooney Boulevard; defendant was driving, and Rick Bateman was seated on the right seat. The officers radioed for assistance and then stopped the vehicle. Buie told defendant to step out of the car onto the sidewalk and asked for his identification. In the meantime, Springmeyer walked to the front of the station wagon and looked through the windshield; he saw the handle of a pistol lying on the floorboard. The officer removed the pistol which was loaded.

Defendant and Bateman were arrested for carrying a concealed weapon in the vehicle, handcuffed and placed in a police car. Thereupon, Officer Buie proceeded to search thoroughly the interior of the station wagon; he searched the front seat, under the front seat and the glove compartment; a fourth policeman, Officer Turner, arrived and he also searched the front area; then the officers searched the rear deck of the station wagon; they found no contraband nor anything of an illegal nature. With a bar, they pried open the car's locked tire well and found a fiberboard suitcase. The suitcase contained marijuana and a locked metal box. The officers pried open the box with a screwdriver and found some 30 grams of heroin.

■ . The officers had sufficient cause to stop defendant's vehicle in order to question defendant and Rick Bateman; they had received information from an anonymous source that Bateman and another man had been selling drugs to high school students and were riding in a 1966 green Ford station wagon; in addition, the officers had received information that Bateman was wanted on a traffic warrant. (*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706].)

■ The officers also had legal cause to arrest defendant on the weapon charge; the handle of the loaded gun was protruding from the front seat and was observed by Springmeyer as he looked through the windshield. (*Harris* v. *United States,* 390 U.S. 234 [19 L.Ed.2d 1067, 88 S.Ct. 992]; *People* v. *Terry,* 70 Cal.2d 410 [77 Cal.Rptr. 460, 454 P.2d 36].) ■ But, neither the outstanding traffic warrant nor the information the officers received from the unknown informant gave them the right to search the vehicle. (*People* v. *Superior Court (Kiefer),* 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449].)

■ The crucial question is whether the search was justified as an incident to the weapon arrest or whether it transgressed constitutional

limitations as articulated in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed. 2d 685, 89 S.Ct. 2034]. In the *Chimel* case the United States Supreme Court limited a warrantless search to the person arrested and the area within his immediate control, i.e., the area within which the suspect might gain possession of a weapon or destructible evidence.

The Attorney General does not assert that the search of the locked tire well was within the permissible bounds of a lawful search as delineated in the *Chimel* opinion. On the contrary, in his brief the Attorney General concedes that "it might be argued that the search of the tailgate section and the fiberboard box contained therein exceeded the permissible scope of a search incident to an arrest established by *Chimel* v. *California* . . . ." He insists that vehicles are not included within the ambit of the *Chimel* case because in a footnote on page 764 [23 L.Ed.2d p. 694] of the opinion the high court observed: "Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' "

■ The law, as well as common sense, dictates that greater latitude should be given to warrantless searches of vehicles than is given to the search of the home or building. A vehicle is movable, "the opportunity to search is fleeting," and in most instances the car's contents would never be found again if an officer had to obtain a search warrant. (*Chambers* v. *Maroney,* 399 U.S. 42, 51 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975]; *Carroll* v. *United States,* 267 U.S. 132, 153 [69 L.Ed. 543, 551, 45 S.Ct. 280].) Nevertheless, the extent to which an officer may search a vehicle without a warrant is not without constitutional restriction; it is governed by the exigencies of the situation, and each case must be judged on its own facts. (*Coolidge* v. *New Hampshire,* 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022, 2035]; *Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881].) Consequently, the weakness of the Attorney General's argument is in the categorical assumption that the United States Supreme Court has excluded vehicles from the operation of the *Chimel* rule without exception.

■ On a close scrutiny, the footnote in the *Chimel* opinion, *supra,* 395 U.S. 752, 764 [23 L.Ed.2d 685, 694], upon which the Attorney General relies, indicates that the court, after suggesting that it was excepting vehicles from the holding of the opinion, carefully limited that exception by stating " 'where it is not practical to secure a warrant because

the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " Furthermore, in its most recent pronouncement on this very subject, the California Supreme Court not only held that warrantless searches of automobiles are limited both as to time and place "as required by *Preston* and *Chimel*," but added that such searches though incident to an arrest, must remain " 'reasonable in scope.' " The California high court in *People* v. *Superior Court (Kiefer)*, *supra*, 3 Cal.3d 807, 813, had this to say: "Turning to the second of the above categories, we confront initially a more difficult question: If a police officer is ordinarily entitled to conduct a search for contraband as an incident to a lawful arrest, why has this rule been held inapplicable to routine traffic violations? When the officer, as here, has probable cause to arrest a driver for committing a traffic offense in his presence, why may he not search the offender's vehicle for contraband as an incident to that arrest? The answer deducible from the cases is that even when limited as required by *Preston* and *Chimel*, a search incident to an arrest must nevertheless remain 'reasonable in scope.' (*People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) As Justice White remarked in his dissent in *Chimel*, 'The [Fourth] Amendment does not proscribe "warrantless searches" but instead it proscribes "unreasonable searches" ' (395 U.S. at pp. 772-773 [23 L.Ed.2d at p. 700]). A search, therefore, 'may be unreasonable and hence unlawful although incident to a lawful arrest.' (*People* v. *Brown* (1955) 45 Cal.2d 640, 643 [290 P.2d 528], and cases cited.) 'What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response.' (*Chimel* v. *California* (1969) *supra*, 395 U.S. 752, 765 [23 L.Ed.2d 685, 695], quoting from *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 83 [94 L.Ed. 653, 669, 70 S.Ct. 430] (dissenting opinion of Frankfurther, J.).) The principal evil sought to be forestalled, of course, is the invasion of individual privacy by wholesale exploratory searches conducted under color of governmental authority. (*Warden* v. *Hayden* (1967) *supra*, 387 U.S. 294, 301 [18 L.Ed.2d 782, 788-789], and cases cited.) For this reason, 'The scope of the search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' (*Terry* v. *Ohio* (1968) 392 U.S. 1, 19 [20 L.Ed.2d 889, 904, 88 S.Ct. 1868]; accord, *People* v. *Collins* (1970) 1 Cal.3d 658, 661 [83 Cal.Rptr. 179, 463 P.2d 403].)

"These rules govern the search of automobiles."

The search of the locked tire well exceeded constitutional limitations

as delineated in the *Chimel* opinion and was unreasonable in scope under the rationale of the *Kiefer* case. This is not a case in which the exigencies of the situation made it reasonably necessary for the police to search the entire vehicle in order to insure their safety. Neither is it a case in which there was danger that the contents of the locked tire well might disappear if the officers had taken the time to obtain a warrant. At the time that the police pried open the tire well with a pry bar, opened the closed suitcase and broke into the metal box, the suspects were under arrest, were in handcuffs and were safely placed in custody in a police car. Further, there were two police vehicles and five police officers at the scene; the automobile was within their firm grasp; it was later inventoried and towed away for storage.

As was stated in *Preston* v. *United States, supra,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780], "[t]he rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." But, to hold that the search in this case was justified as an incident to a lawful arrest, we would have to assume, as does the Attorney General, that every part of a vehicle may be torn asunder and searched by the police solely because they have cause to arrest the occupant. Mr. Justice Mosk, in the *Kiefer* opinion, teaches us differently, and we are bound by that decision.

We are aware of the implications of the United States Supreme Court's holding in *Chambers* v. *Maroney, supra,* 399 U.S. 42; however, the sole question here decided is the application of the *Chimel* rule to searches of automobiles which are purely exploratory though made as an incident to a valid arrest. To quote Mr. Justice Stewart in the *Coolidge* case, *supra,* decided upon facts which occurred before the application of the *Chimel* limitation, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." (*Coolidge* v. *New Hampshire, supra,* 91 S.Ct. 2022, 2035.)[1]

---

[1]It must be remembered that in the *Chambers* case, *supra,* all occupants of the car were arrested in a dark parking lot in the middle of the night, and the court noted that a careful search at that point was impractical and perhaps not safe for the officers; the court relied upon the words in *Carroll* v. *United States, supra,* 267 U.S. 132, that vehicles may be searched without warrants where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the jurisdiction. These problems do not exist in this case and the *Chimel* case applies to these facts. (*Williams* v. *United States,* 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148].)

The judgments on counts I and II are reversed; the judgment on count III, violation of Penal Code section 12025, is affirmed.

Stone, P. J., and Brown (G. A.), J., concurred.