[Crim. No. 19521. First Dist., Div. One. Jan. 31, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ADAM DEAN RUSSELL, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Wendy Shane, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—Following denial of his superior court motion to suppress "all evidence, tangible and intangible, seized from the trunk of defendant's 1964 Pontiac," defendant Russell pleaded guilty to a charge of possession of marijuana for sale, a violation of Health and Safety Code section 11359. He appeals from an order granting conditional probation.

We have concluded, for the reasons we now state, that the appeal is without merit.

At Russell's earlier preliminary examination an officer had testified that upon Russell's arrest and the opening of the trunk of his car: "Then I observed—ah, ah, an Alpha Beta paper bag with a small amount of marijuana residue inside of it; then I observed a small brown paper sack with approximately 24 'Thai Sticks' wrapped in a clear plastic bag. . . . There was a blue flight bag; I unzipped this and found three large bags of marijuana inside and a green canister inside the trunk filled with marijuana seeds."* For reasons as will later appear this testimony was *not* before the court on Russell's motion to suppress.

■ The only issues posed by Russell at the superior court hearing on his motion to suppress were (1) the validity of his arrest by the officer, and (2) whether there was probable cause to believe the vehicle's trunk

---

*"Thai sticks" consist of high potency marijuana wrapped around thin bamboo sticks four to six inches long to a diameter roughly about three-fourths of an inch, with a unit street value of around $50-$100. (See Drug Enforcement (July 1979) Drug Enforcement Admin., U.S. Dept. of Justice.)

■■■■■■■■■■■

contained contraband and, thus, to open and search it. The superior court properly ruled against him on both issues, and Russell here makes no complaint of resultant error.

But during the course of that hearing the prosecutor had asked the officer: "And would you just list what if any suspected contraband you saw and removed from the trunk at that time?" Russell's attorney, the public defender, interjected: "Your Honor, I'll stipulate, based on my review of the court [*sic*], any contraband in the trunk seized properly— it's all seized properly. That will eliminate the necessity of itemizing the material in the trunk. *I believe he made a plain view observation once the trunk was opened.*" (Italics added.)

*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859], instructs that: "[A]ppellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense."

On his appeal Russell's reliance is upon *People* v. *Dalton* (1979) 24 Cal.3d 850, 857, 860 [157 Cal.Rptr. 497, 598 P.2d 467], from which he quotes the following: "[I]n the absence of exigent circumstances which require an immediate search, probable cause furnishes sufficient grounds only for a warrantless seizure and immobilization of the closed containers pending the issuance of a search warrant." (P. 860.)

He then argues: "By failing [1] to advance the foregoing [i.e., *Dalton*] argument to the superior court and [2] by actually stipulating that the contraband found in the zipped blue flight bag was in 'plain view' when the facts established at the preliminary hearing bely [*sic*] that stipulation, defense counsel failed to investigate carefully all defenses of fact and law that were available to petitioner, thus withdrawing a crucial defense from the case. *People* v. *Pope, supra*, 23 Cal.3d at 426."

It is first noted that the hearing on Russell's motion to suppress evidence occurred *February 13, 1979*. The opinion of *People* v. *Dalton* was filed six months later, *August 16, 1979*. It is doubtful that *Pope* requires, under pain of being held to have furnished constitutionally inadequate representation, such prescience on the part of a lawyer for one criminally accused.

Secondly, we observe *Pope's* reiteration (23 Cal.3d, p. 426) that reviewing courts should hesitate to engage "'in the perilous process of second-guessing'" the chosen tactics of an accused's superior court counsel. (And see *People* v. *Najera* (1972) 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Carr* (1972) 8 Cal.3d 287, 296 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Goodridge* (1969) 70 Cal.2d 824, 838 [76 Cal.Rptr. 421, 452 P.2d 637]; *People* v. *Brooks* (1966) 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].) Upon a contention of constitutionally inadequate representation, a judgment will be affirmed "unless there simply could be no satisfactory explanation" of criticized tactics. (23 Cal.3d, p. 426.)

We inquire whether there was a discernible reasonable tactical purpose for Russell's superior court public defender's here questioned concession.

It is first observed that the 24 Thai sticks *were in the police officer's plain view* upon the opening of the automobile's trunk; the three bags of marijuana inside a "zipped" flight bag *were not*. No contention is *here* made that the officer was not permitted to seize the Thai sticks upon opening the trunk.

Next we note that trial counsel's purpose was the suppression of *all of the car's trunk's contents* upon the now abandoned theory that the officer had no probable cause to open the trunk. If successful, there would reasonably have been no evidence supportive of the charges against Russell. (Some "seeds and stems and some other debris" found within the passenger compartment would probably be deemed of little evidentiary value.) Failing in that purpose, conviction under the circumstances was obviously a near certainty. It would make scant difference whether the proof showed possession of 24 Thai sticks alone, *or* 24 Thai sticks and "three large bags of marijuana" inside a "blue flight bag; . . ." Possession, under either of those alternatives, would conclusively support the charges. Either, or both, were indicative of substantial commercial activity with such substances.

Conviction under one would be as grievous as under the other, and there was patently no reason to believe that they would draw different court-imposed penalties. Nothing of substance was to be gained by exclusion only of the "three large bags . . . ."

On the other hand, Russell's attorney might reasonably have considered it to be better that information of, or the police officer's testimonial emphasis upon, the large quantity of contraband be kept from the judge if possible, lest he be subconsciously influenced thereby in determining the validity of Russell's arrest and the all-important issue, i.e., whether the officer had a right to open and search the trunk at all. It is notable that the preliminary examination transcript was not placed in evidence by the public defender, or anyone, and that the information did not disclose the nature and quantity of the contraband. Its only mention was in an unsworn recital of "factual circumstances" of the prosecutor's points and authorities, concerning which the court gave no indication of having read or considered.

And it may well be that the public defender's eventual purpose, upon total denial of his motion to suppress, was to engineer some sort of plea bargain (as was eventually accomplished, i.e., "no state prison"). Such a bargained for plea would more likely be accepted by a judge unaware at the time of the large amount of contraband involved (as also appears to have eventuated in the case).

These, and other such considerations, were probably in the mind of the public defender during the suppression motion's hearing.

We may not say, in the language of *Pope, supra,* that "there simply could be no satisfactory explanation" of the public defender's tactics. And we decline to "second-guess" what to us appears to be a reasonable (some would think eminently so) choice of strategy.

The order granting probation is affirmed.

Newsom, J., concurred.

**GRODIN, J.,** Concurring.—This case illustrates the difficulty an appellate court is likely to encounter in deciding a competency of counsel claim on appeal in the absence (at least) of some opportunity for allegedly incompetent counsel to respond and explain. I do not know, and am unable to determine from the record, whether the reason trial counsel gave for stipulating that all contraband in the trunk was seized properly (namely, that the police officer "made a plain view observation once the trunk was opened") reflected (a) a mistake of fact (since the marijuana was in closed bags); or (b) what turned out to be a mistake

of law in lieu of *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467], which was pending before the Supreme Court at the time of the suppression hearing; or (c) a cover for some other motivation, such as (following my colleagues' hypothesis) to keep the trial court from learning at that point the extent of defendant's illicit holdings. If it was a mistake of fact, then it may well have reflected incompetence on the part of counsel in failing to investigate adequately. If it was a mistake in what turned out to be the law, then the question would exist as to whether competent counsel in a case involving suppression of evidence should reasonably be expected to raise issues pending in cases before the Supreme Court. If it was for some other reason, then we should be told what that reason was and be provided with some evidence by which to evaluate its justification.[1]

Since it is trial counsel who is in the best position to come forward with evidence as to these matters, and since his professional reputation (not to speak of potential liability), is at stake, for an appellate court to determine the competency of his trial performance without hearing from him raises in my mind serious questions not only of compliance with the *Pope* rationale but of due process as well. Thus, while I have reservation concerning some of the propositions contained in the majority opinion,[2] I join in the result because I believe the record does not

---

[1]*Pope* requires us to "see if the record contains any explanation for the challenged aspect of representation," and if it does to "inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) A literal reading of that mandate would confine our consideration to the explanation which trial counsel gave at the time of his stipulation. The majority opinion impliedly assumes, and I agree, that it may be appropriate in certain cases to look further for an explanation of counsel's conduct.

[2]To list my reservations briefly: (a) In my view, the issue presented by appellant's reliance on *People* v. *Dalton, supra,* 24 Cal.3d 850, is not whether counsel must have the "prescience" to anticipate a particular ruling, but whether he has an obligation to be aware of and assert issues which are pending for determination on appeal, and which may be useful to his client. (b) I am not so sure that it would have made "scant difference" whether the proof showed possession of 24 Thai sticks alone or 24 Thai sticks and "three large bags of marijuana inside" a blue flight bag. I note that defendant had been charged with possession for sale *and* transportation of marijuana, and that he pled guilty to the lesser offense. It would appear that a defendant is entitled to make "informed decision[s]" (see *People* v. *Shells* (1971) 4 Cal.3d 626, 631 [94 Cal.Rptr. 275, 483 P.2d 1227]), and exclusion of some of the seized evidence may have affected his decision whether to plead guilty, even assuming the remainder of the evidence would have supported a conviction at trial. (Cf. *People* v. *Rios* (1976) 16 Cal.3d 351, 357-358 [128 Cal.Rptr. 5, 546 P.2d 293]; *People* v. *Hill* (1974) 12 Cal.3d 731, 769 [117 Cal.Rptr. 393, 528 P.2d 1] [overruled on other grounds, 18 Cal.3d 896].) (c) I would be disinclined to assume that the trial judge did not read or consider the prosecutor's

adequately "illuminate the basis for the challenged acts or omissions" or provide a basis for us "to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence." (*People* v. *Pope, supra,* 23 Cal.3d at p. 426.)

A petition for a rehearing was denied February 27, 1980, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1980.

points and authorities, or to posit the principle that it is defendant's burden to show that he in fact read them, but I would want to hear from trial counsel, if relevant to his explanation, why he thought it useful not to object. I note also that trial counsel made *no argument* based on lack of exigent circumstances, but that question has not been raised.