[Crim. No. 18918. First Dist., Div. Four. Mar. 5, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ISADORE ALEXANDER PIPER et al., Defendants and Appellants.

COUNSEL

Martin M. Spiegel and John E. Jones, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—Isadore Alexander Piper and Willie Mae Starks appeal from judgments of imprisonment which were rendered after a jury found Piper guilty of shooting at an occupied vehicle (Pen. Code, § 246) and possession of a concealable firearm by a felon (Pen. Code, § 12021), and Starks guilty of shooting at an occupied vehicle (Pen. Code, § 246) and carrying a concealable firearm within a vehicle (Pen. Code, § 12025).

A truck driver, Ron Silva, was shot at four times from an automobile that had pulled alongside his truck moving on a freeway. While Silva was under fire he broadcast over his citizens' band radio a call for help. As the automobile passed him, he saw that it was a dented, white, mid-1960s Oldsmobile with two people in it. He also observed that it had two extra taillights mounted on its trunk. He broadcast a description of the car over his radio, and then stopped on the side of the freeway. A highway patrol officer who had heard Silva's radio broadcast stopped and spoke briefly with him, and then took off in pursuit of the assailants.

The officer was joined in the chase by four other highway patrol units. Within minutes he stopped a white, 1965 Oldsmobile with extra taillights mounted on the trunk below the back window. The officers arrested the driver, Starks, and· her passenger, Piper. While arresting Piper, one of the officers saw a holster in the middle of the car's front seat and a .38 caliber cartridge on the floor on the passenger side. After Piper was placed in custody, the officer searched the interior of the car, but found no weapon. Another officer then opened the car's locked glove compartment; there he found a handgun. Another .38 caliber cartridge was later found in Piper's clothing.

Later that night, at the county jail, one of the officers heard Piper say to Starks, "Don't say anything. All they've got us for is playing with a gun."

The next day, an officer removed a .38 caliber bullet from the battery box in Ron Silva's truck. A criminalist testified that the bullet had been fired from the gun found in the glove compartment.

■ Appellant Piper contends that his court-appointed lawyer should have moved to suppress the handgun seized in the warrantless search of

the glove compartment of the automobile, and that the failure to do so resulted in the denial of effective assistance of counsel. Pursuing this claim, Piper must show that trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, and that this resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) This court must determine whether a reasonably competent attorney acting as a diligent advocate would have moved to suppress the handgun.

Police officers may conduct a warrantless search of an automobile if (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search. (*People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148], cert. den. 423 U.S. 870 [46 L.Ed.2d 100, 96 S.Ct. 135].) Appellant Piper contends that the warrantless search of Starks' automobile and locked glove compartment was not accompanied by exigent circumstances, because both appellants were handcuffed and in police custody at the time of the search, five separate highway patrol units were on the scene, and the arrests took place in an urban area where a magistrate would have been easily available to issue a warrant. The Attorney General responds that the stopping of a car on a highway in itself constitutes an exigency justifying a warrantless search upon probable cause.[1]

Piper argues that although the federal courts have freely permitted warrantless searches of automobiles stopped on the highway (see *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]), the California courts have not adhered to a blanket automobile exception to the requirement of a warrant. Article I, section 13, of the California Constitution has been held to impose stricter standards upon the law of search and seizure than are imposed by the Fourth Amendment. The principal authorities cited in support of this argument are two California decisions that declared exigent circumstances to be absent where suspects were under arrest, handcuffed, and safely in police custody outside of a searched vehicle, in the presence of a substantial number of officers, so that there was no danger that the car would not

---

[1]No closed containers were searched; thus it could not be maintained that counsel should have moved to suppress on the basis of later cases requiring warrants for the search of such containers. (See *People* v. *Dalton* (1979) 24 Cal.3d 850, 855 [157 Cal.Rptr. 497, 598 P.2d 467], cert. applied for Dec. 1979, Supreme Ct. Dock. No. 79-930; *People* v. *Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514], cert. den. 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181].)

remain safely in police custody. (*People* v. *Jochen* (1975) 46 Cal. App.3d 243, 247-248 [119 Cal.Rptr. 914]; *People* v. *Koehn* (1972) 25 Cal.App.3d 799, 805 [102 Cal.Rptr. 102]; see also *People* v. *Wright* (1977) 72 Cal.App.3d 328, 345 [140 Cal.Rptr. 98].) Piper also relies on *People* v. *Cook, supra*, 13 Cal.3d 663, 669, arguing that the court's recital of exigent circumstances in that case indicates rejection of the view that exigent circumstances exist whenever an automobile is stopped on the highway. (See also *People* v. *Dumas* (1973) 9 Cal.3d 871, 884-885 [109 Cal.Rptr. 304, 512 P.2d 1208].)

In *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145], the California Supreme Court, relying on *Chambers* v. *Maroney, supra*, 399 U.S. 42, held that "when there is probable cause to believe that an automobile stopped on a highway contains contraband, evidence of a crime, or was itself an instrumentality of the commission of one, law enforcement officers need not obtain a warrant before conducting a search since there is no distinction of constitutional proportion between an immediate search on probable cause without a warrant and the automobile's immobilization until one is secured." In *Laursen*, one of the suspects had been arrested and the other had escaped from the scene of the crime; yet the court held that the police, upon probable cause, were entitled to search the automobile without a warrant, and furthermore could do so after the vehicle was impounded at a police garage. (8 Cal.3d at pp. 201-202.) The court's holding implies that exigent circumstances justified the search, in spite of the fact that there was no danger that the car would not remain safely in police custody until a warrant was obtained. (Accord, *People* v. *Hill* (1974) 12 Cal.3d 731, 751 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another pt. in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Remiro* (1979) 89 Cal.App.3d 809, 829-830 [153 Cal.Rptr. 89], cert. den. *sub nom. California* v. *Little*, 444 U.S. 937 [62 L.Ed.2d 197, 100 S.Ct. 288]; *People* v. *Paul* (1978) 78 Cal.App.3d 32, 46-47 [144 Cal.Rptr. 431]; compare *People* v. *Minjares, supra*, 24 Cal.3d at page 418 ["real, rather than theoretical, exigencies are required before *luggage* may be searched without a warrant" (italics added)].)

The rule set forth in *People* v. *Laursen* remained unchanged as of the time of trial in the present case. Although there were already, in the *Koehn* and *Jochen* opinions, expressions generally supporting Piper's contention that some degree of "real" exigency must be present to justify warrantless search of an automobile stopped along a highway when

the occupants are safely within police custody, these expressions by the Court of Appeal did not render it a constitutional deprivation for counsel to rely on an unimpaired holding of the Supreme Court and to withhold making a motion to suppress evidence in anticipation that the law might be changed. Appellant Piper has not sustained his burden of showing to the contrary on this appeal. (See *People v. Pope, supra*, 23 Cal.3d 412, at pp. 425-426.)

Appellant Piper previously was convicted of manslaughter, for which he served a prison term. The information in the present case charged him with possession of a concealable firearm by a felon, in violation of Penal Code section 12021. Before trial, defense counsel offered to stipulate that Piper had been convicted of a felony and argued that the jury should not be informed of the prior conviction. The prosecution responded that it had a right to prove the conviction, and the trial court rejected the proposed stipulation. The trial court also denied defense counsel's subsequent motion that the jury not be told what the specific felony was. Both appellants challenged the trial court's rulings.

■ A previously convicted felon charged with possessing a concealable weapon may not preclude introduction of the prior conviction into evidence by admitting the felony conviction out of the presence of the jury. (*People v. Black* (1979) 96 Cal.App.3d 846, 853-854 [158 Cal.Rptr. 449]; *People v. Morrison* (1977) 67 Cal.App.3d 425, 427-428 [136 Cal.Rptr. 650]; *People v. Faulkner* (1972) 28 Cal.App.3d 384, 393 [104 Cal.Rptr. 625]; contra, *People v. Sherren* (1979) 89 Cal. App.3d 752, 759-760 [152 Cal.Rptr. 828].) This rule avoids jury confusion. Possession of a concealable weapon is not per se illegal; if the jury is not allowed to see the whole picture, jurors may be baffled at being asked to determine guilt on a finding of possession where they may be well aware that mere possession is not an offense.

■ Proof of the prior conviction, however, is limited by considerations of relevancy and undue prejudice. "[W]here the existence of a prior [felony] is an element of the crime charged, it is the responsibility of the trial court to exercise its discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will...create substantial danger of undue prejudice,...' (Evid. Code, § 352.)" (*People v. Morrison, supra*, 67 Cal.App.3d at p. 428 [error to receive proof of more than one of five prior convictions]; see *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492

P.2d 1].) Piper's prior felony (voluntary manslaughter) and one of the crimes with which he was charged (shooting at an occupied vehicle) were both crimes of violence. Thus, although the prosecutor was entitled to introduce evidence of the prior felony, the identification of that felony as voluntary manslaughter created a substantial danger that the jury would view it as proof of a propensity to commit the violent crime with which Piper was charged. The probative value of identifying the prior felony was substantially outweighed by the danger that its admission would create prejudice.

Although the trial court acted correctly in rejecting Piper's efforts to prevent the jury from being informed that there was a prior felony conviction, the court erred when it denied Piper's motion that the jury not be told what the specific prior felony was. Given Piper's proposed stipulation, the trial court could have avoided both jury confusion and undue prejudice to the defendant by informing the jury that he had by stipulation admitted that he was a previously convicted felon. Proof of the specific felony could then have been excluded on grounds of undue prejudice.

This approach is not inconsistent with the general rule that the prosecution cannot be restricted by stipulations in presenting its case. ▮ "A prosecutor is not required to stipulate to the existence of any elements of the crime he is attempting to prove *where the stipulation will impair the effectiveness of the prosecutor's case* and foreclose his options to obtain a conviction under differing theories." (*People v. Robles* (1970) 2 Cal.3d 205, 213 [85 Cal.Rptr. 166, 466 P.2d 710]; italics added; see also *People* v. *McClellan* (1969) 71 Cal.2d 793, 802 [80 Cal.Rptr. 31, 457 P.2d 871].) The effectiveness of the prosecutor's proof that Piper had been a previously convicted felon in possession of a handgun would not have been impaired by the prosecutor's preclusion from proving that Piper's prior felony was voluntary manslaughter.

▮ The error, however, does not call for reversal unless a miscarriage of justice resulted. (Cal. Const., art. VI, § 13.) There was strong circumstantial and physical evidence against appellants. The broadcast description of the automobile from which Ron Silva was fired upon, which included a description of the distinctive extra taillights, precisely described the automobile subsequently stopped by the police officers. A handgun was found in the automobile. A criminalist testified that, in his opinion, based upon scientific analysis, a bullet later recovered from

Ron Silva's truck was fired from this handgun. It is not reasonably probable that a result more favorable to appellants would have been obtained but for the error. (*People* v. *Watson* (1956) 46 Cal.2 818, 837 [299 P.2d 243].)

■ Appellants contend that the trial court erred when it received testimony as to certain statements by Piper and subsequently instructed the jury on admissions.[2] Over objection the court permitted a police officer to testify that, at the county jail on the night Piper and Starks were arrested, he heard Piper say to Starks, "Don't say anything. All they've got us for is playing with a gun." Appellants argue that the remarks did not constitute an admission.

Citing *People* v. *Allen* (1976) 65 Cal.App.3d 426, 433-434 [135 Cal.Rptr. 276], appellant Piper argues that an implied admission could not properly have been inferred from the quoted statement because one who heard the statement could not reasonably believe that he intended any implication indicating guilt. But no implication is necessary for Piper's statement to be construed as an admission. The statement had a tendency in reason directly to prove that appellants, by "playing with a gun," at least possessed a concealable weapon, and could have fired upon an occupied vehicle as well. The evidence was admissible and the instruction was proper.

Appellants contend that the prosecutor committed prejudicial misconduct by deliberately bringing out inadmissible hearsay testimony from the criminalist who analyzed the handgun found in the Oldsmobile and the bullet removed from Ron Silva's truck. The prosecutor asked the criminalist whether he consulted with a colleague before forming a final opinion; the witness answered that he did. The prosecutor then asked whether he always obtained the "concurrence" of another criminalist. Defense counsel objected, and the court sustained the objections. There was no claim of misconduct and no request for a jury admonition.

[2]CALJIC No. 2.71: "A statement made by a defendant other than at his trial may be an admission.

"An admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence.

"You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true.

"Evidence of an oral admission of the defendant ought to be viewed with caution."

■ A witness giving an opinion may state on direct examination the matter upon which it is based. (Evid. Code, §§ 801, 802.) A physician witness may further testify as to content of an opinion of an out-of-court physician upon which the testifying physician based his diagnosis and treatment of a patient. (*Kelley* v. *Bailey* (1961) 189 Cal.App.2d 728, 738-739 [11 Cal.Rptr. 448].) Such testimony is admissible not as independent proof of the facts stated, but as part of the information upon which the doctor based the diagnosis and treatment. (See also *Conservatorship of Buchanan* (1978) 78 Cal.App.3d 281, 288 [144 Cal.Rptr. 241]; *Springer* v. *Reimers* (1970) 4 Cal.App.3d 325, 338 [84 Cal.Rptr. 486].) But the *Kelley* rule is applicable only where a testifying physician used another physician's opinion in diagnosis and treatment and the opinion was on a parity with the history given by the patient, and not where a witness was consulted as an expert and then called to offer expert opinion evidence. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 895, 895 fn. 26 [112 Cal.Rptr. 540, 519 P.2d 588].)

■ By analogy to the provisions of the Evidence Code and to *Whitfield*, the prosecutor acted properly when he asked the criminalist *whether* he consulted another criminalist before rendering a final opinion, but the prosecutor sought inadmissible hearsay testimony when he asked for the content of that second opinion. There is, however, no indication of misconduct; the court properly sustained the objections of the defense and the inadmissible answer was not given. Reversal of the judgment is not called for.

Appellant Piper contends that the prosecutor committed misconduct by failing to delete references to Piper's conduct on parole from an exhibit given to the jury. The court had ordered the prosecutor to delete a page from the document to be introduced, but the page was apparently never deleted and remained a part of the exhibit. The page indicated that two emergency parole reports on Piper had been submitted, and that a violation report would be submitted with "next use [of] alcohol." Piper contends that, because the jury heard testimony that he had consumed some alcohol on the night he was arrested, he was prejudiced by the revelation to the jury that his next use of alcohol would constitute a parole violation.

■ Even if inadvertent, the prosecutor's failure to comply with the trial court's order to delete the page constituted misconduct. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d

396].) Appellant has the burden of showing that it is reasonably probable that a result more favorable to him would have occurred in the absence of the error assigned. (See, e.g., *id.*, at p. 214; *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal. Rptr. 521, 447 P.2d 913], cert. den. 406 U.S. 971.) The lapse did not concern any matter of apparent importance, and the evidence against the defendants was strong. It cannot be said that it is reasonably probable that a result more favorable to Piper would have occurred but for the failure to delete the restricted material from the exhibit.

█ The trial court instructed the jury that if a testifying defendant fails "to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable." (CALJIC No. 2.62.) Appellants contend that it was error to give this instruction because they did not fail to explain or deny any of such evidence or facts. That contention is meritless. The evidence that the handgun found in appellant's car had fired the bullet found in Ron Silva's truck was not explained or denied by appellants.

Affirmed.

Rattigan, Acting P. J., concurred.

**POCHÉ, J.**—I concur in the judgments.

With respect to the conviction of appellant Piper for the felony of shooting at an occupied vehicle (Pen. Code, § 246) my concurrence is premised solely on the ground, not reached by the majority, that any error was harmless beyond a reasonable doubt. Even if one assumes that counsel was inadequate, that inadequacy at most resulted in admission in evidence of a gun which was identified by a ballistics expert as having fired the bullet found in the victim's car. While that would in most cases involving this type of crime be the key to a verdict of guilty, here it was merely cumulative. Using his citizens' band radio the victim sent a description of the crime in progress and a contemporaneous, detailed description of the car from which the shots were made. As a result, quick acting highway patrol officers were able almost immediately to

respond and to stop a vehicle that matched precisely the description given, including two distinctive taillights mounted on the trunk. Inside the car in plain view was a holster on the front seat and a .38-caliber cartridge on the floor. Another .38-caliber cartridge was found on Piper's clothing and a .38-caliber slug was found in the battery box on the victim's truck. To contend that the error in this case is not harmless beyond a reasonable doubt would be to trifle with reality.

With respect to appellant Piper's conviction for possession of a concealable firearm by a felon (Pen. Code, § 12021) I concur in the result solely on the basis that appellant has not sustained his burden of showing incompetency of trial counsel. For all that I can discern from this record, the reason counsel did not make a motion to suppress may have had nothing to do with the extremely intricate case law discussed by the majority but may have been that consent was given for the search of the locked glove compartment. The claim of ineffective assistance of trial counsel is more appropriately made in a petition for habeas corpus especially where the record is silent—as it is here—on the reasons why no motion to suppress was made. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) This case is but another sad example of "the difficulty an appellate court is likely to encounter in deciding a competency of counsel claim on appeal in the absence (at least) of some opportunity for allegedly incompetent counsel to respond and explain." (See Justice Grodin's conc. opn. in *People* v. *Russell* (1980) 101 Cal.App.3d 665 at pp. 670-672 [161 Cal.Rptr. 735], and *In re Lower* (1980) 100 Cal.App.3d 144, 152-153 [161 Cal.Rptr. 24].)

With respect to appellant Starks, who does not raise or join in *Pope*-like claims, I concur in the judgment and in the reasoning of the majority opinion.

Petitions for a rehearing were denied March 28, 1980, and appellants' petitions for a hearing by the Supreme Court were denied June 5, 1980. Tobriner, J., was of the opinion that the petition should be granted.